STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Gerard W. CARTER, Defendant-Appellant.

Supreme Court

*No. 2008AP3144–CR. Oral argument September 15, 2010.
—Decided December 2, 2010.*

2010 WI 132

(Also reported in 794 N.W.2d 213.)

For the plaintiff-respondent-petitioner there were briefs by *Michael C. Sanders,* assistant attorney general, and *J.B. Van Hollen,* attorney general, and oral argument by *Michael C. Sanders.*

For the defendant-appellant there was a brief by *Craig M. Kuhary* and *Walden, Schuster, & Vaklyes, S.C.,* Waukesha, and oral argument by *Craig M. Kuhary.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals.[1] The court of appeals reversed the judgment imposed by the Circuit Court for Walworth County, Michael S. Gibbs, Judge.

¶ 2. The question of law before this court is whether Gerard Carter's two prior suspensions of his operating privilege under the Illinois "zero tolerance" law[2] fall within Wis. Stat. § 343.307(1) (2007–08)[3] so that the Illinois suspensions are counted in sentencing Carter for his Wisconsin offense of Operating While Under the Influence (OWI) under Wis. Stat. § 346.65(2).

¶ 3. The Wisconsin legislature has established an accelerated penalty structure for OWI offenses in Wis. Stat. § 346.65(2). The severity of a defendant's penalty for OWI is based on the number of prior convictions

---

[1] *State v. Carter,* 2009 WI App 156, 321 Wis. 2d 719, 775 N.W.2d 297.

[2] The terms "zero tolerance law" and "absolute sobriety law" are used here to refer to laws suspending or revoking the operating privilege of a person who has not attained the legal drinking age and who engages in certain conduct.

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

under §§ 940.09(1) and 940.25 "plus the total number of suspensions, revocations, and other convictions counted under Wis. Stat. § 343.307(1)."[4] The present case requires us to interpret "suspensions, revocations, and other convictions" under Wis. Stat. § 343.307(1).

¶ 4. The circuit court determined that the suspensions of Carter's operating privilege in Illinois were either for refusal to submit to chemical testing or for submitting to chemical testing which disclosed an alcohol concentration greater than 0.00. In either event, according to the circuit court, Carter should be sentenced as a fourth offender under Wis. Stat. § 343.307(1)(d), counting his two prior suspensions under the Illinois "zero tolerance" law.

¶ 5. The court of appeals reversed the judgment of the circuit court, concluding that the two prior suspensions of Carter's operating privilege under the Illinois "zero tolerance" law do not fall within Wis. Stat. § 343.307(1) to be counted in determining his sentence.[5] The court of appeals remanded the cause to the circuit court for sentencing based on OWI, second offense.

¶ 6. For the reasons set forth, we reverse the decision of the court of appeals and affirm the judgment of the circuit court. We conclude that the two prior suspensions of Carter's operating privilege under the Illinois "zero tolerance" law are convictions within the meaning of Wis. Stat. §§ 343.307(1)(d) and 340.01(9r), and that the circuit court appropriately counted them in sentencing Carter for his OWI violation.

---

[4] *See* Wis. Stat. § 346.65(2)(am)2.-7.

[5] *Carter,* 321 Wis. 2d at ¶ 14.

¶ 7.  For purposes of this review the relevant facts are *not in dispute.* Carter was arrested in Wisconsin on August 25, 2007, and charged with operating while under the influence of an intoxicant, second offense,[6] and with a prohibited blood alcohol concentration. The State amended this charge to OWI, fourth offense, upon discovering that Carter had two prior suspensions of his Illinois operating license under the Illinois "zero tolerance" law.[7]

¶ 8.  Carter entered a guilty plea to the OWI charge and filed a motion challenging, under Wis. Stat. § 343.307(1), the State's counting for sentence enhancement purposes his two prior Illinois suspensions. The circuit court denied the motion.

¶ 9.  As background to resolve whether the two prior Illinois suspensions are counted under Wis. Stat. § 343.307(1) for penalty enhancement, we describe briefly Illinois' "zero tolerance" law and Wisconsin's "absolute sobriety" law.

¶ 10.  Our description of the Illinois law comes from the Illinois Supreme Court's description of the law in *Arvia v. Madigan,* 809 N.E.2d 88 (Ill. 2004), which resolved a challenge to the constitutionality of the law.

¶ 11.  In Illinois, a driver under the age of 21 arrested for any violation of the Illinois Vehicle Code (or similar local ordinance) is deemed to have given consent to chemical tests to determine the alcohol content of the

---

[6] Carter was previously convicted of driving under the influence.

[7] These suspensions resulted from violations occurring in 1999 and 2001, when Carter was 18 and 20 years old, respectively.

driver's blood if the police officer has probable cause to believe the driver has consumed any amount of an alcoholic beverage. The officer must warn the driver that refusal to submit to the test or submission to a test resulting in an alcohol concentration greater than 0.00 may result in a suspension of the driver's license; the suspension may range from three months to two years.

¶ 12.   Upon refusal to submit to the test or upon a test resulting in an alcohol concentration greater than 0.00, the Illinois arresting officer must file a sworn report with the Illinois Secretary of State and notify the driver of the sanction. Upon receipt of the officer's sworn report, the Secretary of State enters the appropriate sanction on the driver's record and notifies the driver of the sanction and the effective date.

¶ 13.   A driver can request an administrative hearing before the Illinois Secretary of State. The hearing is limited in scope and governed by the provisions applicable to administrative hearings before the Illinois Secretary of State. The Secretary of State may rescind, modify, or continue the sanction. The final decision of the Secretary of State is subject to judicial review.

¶ 14.   In Illinois, a suspension may result from refusal to submit to chemical testing or the consumption of even small amounts of alcohol. In Illinois a young driver whose license is suspended under the zero tolerance law for refusal to submit to chemical testing or for a test resulting in a blood alcohol concentration greater than 0.00 but less than 0.08 ordinarily faces no other criminal prosecution.

¶ 15.   Wisconsin has laws similar to those in Illinois governing "absolute sobriety" for persons who have not attained legal drinking age. First, if a person who has not attained legal drinking age improperly refuses

to submit to a test for prohibited alcohol concentration, one penalty is revocation of the person's operating privilege. *See* Wis. Stat. §§ 346.63(2m), 343.305(10)(em).

¶ 16.   Second, Wis. Stat. § 346.63(2m) makes it illegal for a person who has not attained legal drinking age to operate a motor vehicle with an alcohol concentration of more than 0.00 but less than 0.08. One penalty for this violation is suspension of the person's operating privilege under Wis. Stat. § 343.30(1p).

¶ 17.   Under Wisconsin's accelerated OWI penalty structure, these two "absolute sobriety" statutes governing "underage" persons, namely improperly refusing to submit to a test for intoxication[8] and operating with a concentration of more than 0.00 but less than 0.08,[9] are not counted for the purposes of Wisconsin's penalty enhancement. *See* Wis. Stat. § 343.307.

¶ 18.   Accordingly, one way of viewing the issue before us is to ask whether Wis. Stat. § 343.307(1) treats a violation of the Illinois "zero tolerance" laws differently than the way it treats a violation of the Wisconsin "absolute sobriety" laws in counting offenses for purposes of sentencing.

II

■

¶ 19.   We must interpret and apply Wis. Stat. § 343.307(1) to undisputed facts in the present case. Interpretation and application of a statute to undisputed facts are ordinarily questions of law that this

---

[8] *See* Wis. Stat. §§ 346.63(2m), 343.30(1p), 343.305(10)(em).
[9] *See* Wis. Stat. §§ 346.63(2m), 343.30(1p).

court decides independently of the circuit court and court of appeals but benefiting from their analyses.[10]

## III

¶ 20.  Wisconsin Stat. § 343.307(1) instructs the circuit court to count convictions of certain offenses and specific suspensions or revocations of operating privileges for the purpose of the accelerated OWI penalty structure.

¶ 21.  Wisconsin Stat. § 343.307(1) provides as follows:

343.307 Prior convictions, suspensions or revocations to be counted as offenses.

(1) The court shall count the following to determine the length of a revocation under s. 343.30(1q)(b) and to determine the penalty under ss. 114.09(2) and 346.65(2):

(a) Convictions for violations under s. 346.63(1), or a local ordinance in conformity with that section.

(b) Convictions for violations of a law of a federally recognized American Indian tribe or band in this state in conformity with s. 346.63(1).

(c) Convictions for violations under s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle.

(d) Convictions under the law of another jurisdiction that prohibits a person from refusing chemical testing or using a motor vehicle while intoxicated or under the influence of a controlled substance or controlled substance analog, or a combination thereof; with an excess or specified range of alcohol concentration; while under

---

[10] *State v. Popenhagen,* 2008 WI 55, ¶ 32, 309 Wis. 2d 601, 749 N.W.2d 611.

9

the influence of any drug to a degree that renders the person incapable of safely driving; or while having a detectable amount of a restricted controlled substance in his or her blood, as those or substantially similar terms are used in that jurisdiction's laws.

(e) Operating privilege suspensions or revocations under the law of another jurisdiction arising out of a refusal to submit to chemical testing.

(f) Revocations under s. 343.305(10).

(g) Convictions for violations under s. 114.09(1)(b) 1. or 1m.

¶ 22. Two subsections are relevant here: Wis. Stat. § 343.307(1)(e) and (1)(d).

¶ 23. We examine Wis. Stat. § 343.307(1)(e) first. This subsection provides that a circuit court shall count for purposes of sentencing, "operating privilege suspensions or revocations under the law of another jurisdiction arising out of a refusal to submit to chemical testing." The plain language of the statute provides that if a suspension or revocation under the law of another state arises out of a refusal to submit to chemical testing, the out-of-state operating privilege suspension counts as a prior offense under § 343.307(1)(e) for penalty enhancement.

¶ 24. Section 343.307(1)(e) treats a violation of the Illinois "zero tolerance" laws differently than the way the legislature treats a violation of the Wisconsin "absolute sobriety" laws in counting offenses for purposes of sentencing. The legislature has expressly directed that if Carter's two previous Illinois suspensions arose from a refusal to submit to chemical testing they would count under Wis. Stat. § 343.307(1)(e) for penalty enhancement even though similar refusals under Wisconsin's absolute sobriety law do not count as a penalty enhancement.

10

¶ 25. The State bears the burden of establishing prior offenses as the basis for the imposition of enhanced penalties.[11] Carter's Illinois driving record was before the circuit court. The driving record does not, however, state whether Carter's two suspensions under the Illinois "zero tolerance" law arise from a refusal to submit to testing or from a test resulting in an alcohol concentration of more than 0.00.

¶ 26. The State argues that the length of Carter's suspensions indicates that the suspensions were likely for refusal to submit to chemical testing and thus fall within Wis. Stat. § 343.307(1)(e). Carter disputes this assertion.

¶ 27. We agree with Carter and the court of appeals that the driving record does not provide sufficient information to conclude that the suspensions arose from refusals to submit to testing. We conclude, as did the court of appeals, "that the State has failed to establish that Carter's suspension was the result of a refusal and therefore has failed to establish that the suspension counts under Wis. Stat. § 343.307(1)(e) for purposes of penalty enhancement under § 346.65(2)."[12]

¶ 28. We therefore turn to Wis. Stat. § 343.307(1)(d) to determine whether Carter's two Illinois operating privilege suspensions are to be counted in Wisconsin under § 343.307(1)(d) for penalty enhancement.

¶ 29. Wisconsin Stat. § 343.307(1)(d) is not easy to read and is not a model of clarity. The sentence is

---

[11] *State v. Wideman,* 206 Wis. 2d 91, 94, 556 N.W.2d 737 (1996).

[12] *Carter,* 321 Wis. 2d at ¶ 13.

composed of several clauses that lack consistent parallel structure. The phrase "with an excess or specified range of alcohol concentration" lacks the parallel structure of three other phrases, each of which begins with the word "while." Nevertheless, statutory interpretation begins with the text of the statute. This subsection reads as follows:

> (1) The court shall count the following to determine the length of a revocation . . . and to determine the penalty . . . :
>
> . . . .
>
> (d) *Convictions under the law of another jurisdiction* that *prohibits a person from refusing chemical testing* or *using a motor vehicle* while intoxicated or under the influence of a controlled substance or controlled substance analog, or a combination thereof; *with an excess or specified range of alcohol concentration;* while under the influence of any drug to a degree that renders the person incapable of safely driving; or while having a detectable amount of a restricted controlled substance in his or her blood, as those or substantially similar terms are used in that jurisdiction's laws.

¶ 30. In examining the run-on list in Wis. Stat. § 343.307(1)(d), we conclude that the phrase "with an excess or specified range of alcohol concentration" modifies the phrase "using a motor vehicle," not the phrase "using a motor vehicle while intoxicated or under the influence of a controlled substance or controlled substance analog, or a combination thereof." Thus, this part of the statute should be read as follows: convictions under the law of another jurisdiction that prohibits a person from using a motor vehicle with an excess or specified range of alcohol concentration. This interpretation comports with the text (and its

punctuation) and fulfills the objectives of the OWI statutes to prohibit both operating while intoxicated and operating when tests show a prohibited alcohol concentration in excess of that permitted by statute.

¶ 31.   We turn now to the first word we encounter in need of definition in Wis. Stat. § 343.307(1)(d), namely the word "convictions." The State and Carter disagree about the meaning of the word "convictions" as used in Wis. Stat. § 343.307(1)(d).

¶ 32.   The State argues that the definition of the word "conviction" set forth in Wis. Stat. § 340.01(9r) applies to the word "convictions" in § 343.307(1)(d).[13]

¶ 33.   Wisconsin Stat. § 340.01(9r) explicitly pro- vides a definition of "conviction" that applies to chapters 340 to 349 of the statutes, "unless a different meaning is expressly provided or the context clearly indicates a different meaning." Wis. Stat. § 340.01. See also § 343.01(1), which provides that "[w]ords and phrases defined in s. 340.01 are used in the same sense in this chapter unless a different definition is specifically pro- vided."

¶ 34.   The text of chapter 343, and specifically Wis. Stat. § 343.307(1), does not expressly provide a mean- ing for the word "convictions" that is different from the definition of "conviction" in § 340.01(9r).

¶ 35.   Nor does the context of Wis. Stat. § 343.307(1)(d) clearly indicate a different meaning of "conviction" than that set forth in § 340.01(9r). Rather, the context of § 343.307(1)(d) supports the conclusion

---

[13] " 'Conviction' . . . means an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or an authorized administrative tribunal . . . ." Wis. Stat. § 340.01(9r).

that the § 340.01(9r) definition of "conviction" applies to § 343.307(1)(d). Wisconsin Stat. § 343.307(1) contains a list of acts that a court shall count in determining the penalty for an OWI violation. Subsections (1)(a)-(d) & (g) all begin with the word "convictions." For subsections (1)(a)-(c) & (g) of § 343.307(1) the statutory definition of "convictions" under Wis. Stat. § 340.01(9r) apparently fits and makes sense. Why would the legislature intend a different definition of "convictions" in subsection (1)(d) than it uses in the other subsections?

¶ 36. Carter's response to this question is that the § 340.01(9r) definition of "conviction" does not apply in Wis. Stat. § 343.307(1)(d) because suspension of an operating privilege falls under Wis. Stat. § 343.307(1)(e), which more specifically addresses out-of-state suspensions and revocations. Carter asserts that applying the § 340.01(9r) definition of "convictions" to include a suspension resulting from a refusal to submit to chemical testing within § 343.307(1)(d) effectively renders § 343.307(1)(e) redundant and therefore is an incorrect interpretation of the statutes.

¶ 37. Carter relies on *State v. Machgan*, 2007 WI App 263, 306 Wis. 2d 752, 743 N.W.2d 832, to support his interpretation of the statutes. The court of appeals determined in *Machgan* that an out-of-state administrative suspension of operating privilege based on probable cause that the defendant was operating while under the influence of alcohol was not counted as a conviction under Wis. Stat. § 343.307(1)(d). The court of appeals concluded in *Machgan* that § 343.307(1)(d) is the specific statute addressing out-of-state convictions, suspensions, and revocations for purposes of penalty enhancement and therefore controls over the statutory definition of the word "conviction" in § 340.01(9r).

14

¶ 38. The *Machgan* court of appeals noted that Wis. Stat. § 343.307(1)(e) separately and specifically provides only one type of revocation or suspension "under the law of another jurisdiction," that is, "a suspension or revocation arising out of a refusal to submit to chemical testing." According to the *Machgan* court, the legislature did not intend § 343.307(1)(d) to include an out-of-state suspension or revocation, rendering (1)(e) redundant. We disagree with the *Machgan* court.

¶ 39. While there may be many instances in which suspensions that fall within Wis. Stat. § 343.307(1)(e) also are convictions under Wis. Stat. § 343.307(1)(d), that fact does not necessarily make (1)(e) redundant. The legislative history of Wis. Stat. § 343.307(1)(d) suggests that the legislature intended the scope of the statute to be broad. For example, in recreating Wis. Stat. § 343.307(1)(d) in 1989 the legislature removed the requirement that only violations of other statutes in conformity with Wisconsin law were to be counted for accelerated sentencing purposes.[14]

---

[14] Prior to 1989 Wis. Act 105, Wis. Stat. § 343.307 (1987–88) provided: "For purposes of counting the number of refusals, revocations and convictions [under enumerated statutes] . . . convictions for violation[ ] . . . [of] a state statute of another state in conformity therewith . . . shall be counted . . . ."

In *State v. Mattson,* 140 Wis. 2d 24, 409 N.W.2d 138 (Ct. App. 1987), the court of appeals determined that violations of Minnesota's Operating While Intoxicated (OWI) statutes could not be counted in sentencing under Wisconsin law because Minnesota statutes were not in "conformity" with Wisconsin's OWI statutes.

Act 105 creating Wis. Stat. § 343.307(1)(d) addressed and repudiated the *Mattson* decision by eliminating the requirement of conformity. *See* Memo of John Sobotik, Assistant

¶ 40. The legislative history of subsection (1)(e) demonstrates that the subsection was added in an effort to address the fact that the circuit courts were not counting out-of-state refusals to submit to testing as convictions. In responding to a request to comment on adding subsection (1)(e), Assistant General Counsel of the Wisconsin Department of Transportation John Sobotik concluded that "[a]rguably, this provision was already in the law due to the definition of conviction in Ch. 340. The courts, however, have not been counting out-of-state refusals, and this provision will make them countable."[15]

¶ 41. There is no indication in the legislative history that the addition of subsection (1)(e) was in-

General Counsel, Dep't of Transp. (May 24, 1990), writing "to clear up some misunderstandings regarding Wisconsin Act 105" (on file at Legislative Reference Bureau, Madison, Wis.).

[15] John Sobotik, Assistant General Counsel of the Department of Transportation wrote: "Proposed 343.307(1)(e) and (2)(f) both provide that out of state revocations and suspensions resulting from a refusal to submit to chemical testing shall be counted. This is a new provision to 343.307. Arguably, this provision was already in the law due to the definition of conviction in Ch. 340. The courts, however, have not been counting out-of-state refusals, and this provision will make them countable." Memorandum from John J. Sobotik, Assistant General Counsel, Wis. Dep't of Transp., to Senator Carol Buettner; Joe Maassen, Deputy General Counsel, Dep't of Transp.; Bob Nelson, LRB; Gary Radloff, Aide to Senator Buettner; Re: Drunk Driving cleanup bill (Jan. 17, 1992), in Legislative Reference Bureau Bill drafting file for 1991 Senate Bill 504, Wisconsin Legislative Reference Bureau, Madison, Wis.

1991 Senate Bill 504 failed to pass. Subsection (1)(e) was, however, included in 1991 Senate Bill 308 which addressed a number of areas of Wisconsin's drunk driving law and was enacted as 1991 Wis. Act 277.

tended as a limitation to the scope of out-of-state convictions counted under subsection (1)(d).

¶ 42. Applying the definition of "conviction" under Wis. Stat. § 340.01(9r) to the word "convictions" in § 343.304(1)(d) comports with the text of the statutes and the legislative policy choice evidenced in the legislative history of § 343.307(1)(d) and (1)(e) to ensure that Wis. Stat. § 343.307(1)(d) and (e) apply broadly to prior out-of-state conduct.

¶ 43. We therefore conclude that the definition of the word "conviction" in Wis. Stat. § 340.01(9r) applies to the word "convictions" in § 343.307(1)(d).[16] We further conclude that the court of appeals erred in the present case and in *State v. Machgan,* 2007 WI App 263, 306 Wis. 2d 752, 743 N.W.2d 832, in holding that the definition of the word "conviction" in § 340.01(9r) does not apply to the word "convictions" in § 343.307(1)(d). As a result, we overrule that portion of *Machgan* in conflict with the interpretation of the statutes set forth herein.

¶ 44. We next examine the meaning of the word "convictions" in Wis. Stat. § 343.07(1)(d) in conjunction with the phrase "under the law of another jurisdiction." Section 343.307(1)(d) provides that the court shall count convictions (as defined in Wis. Stat. § 340.03(9r)) under "the law of another jurisdiction that prohibits" conduct specified in (1)(d). Thus, we read " 'under the law of another jurisdiction' not as delimiting 'convic-

---

[16] *State v. List,* 2004 WI App 230, 277 Wis. 2d 836, 691 N.W.2d 366, supports our reading of Wis. Stat. § 343.307(1)(d) and § 340.01(9r). The court of appeals in *List* applied the statutory definition of "conviction" in Wis. Stat. § 340.01(9r) to § 343.307(1)(d).

tions,' but rather as introducing and pertaining to 'that prohibits' and the remainder of the paragraph."[17]

¶ 45.   The other jurisdiction need only have a law that prohibits conduct specified in Wis. Stat. § 343.307(1)(d), namely refusing to submit to chemical testing; operating while intoxicated; operating while under the influence of a controlled substance or controlled substance analog, or a combination thereof; operating with an excess or specified range of alcohol concentrations; operating while under the influence of any drug to a degree that renders the person incapable of driving safely; or operating while having a detectable amount of a restricted controlled substance in his or her blood.

¶ 46.   The conduct prohibited under Illinois' "zero tolerance" law relevant to Wis. Stat. § 343.307(1)(d) in the instant case is refusing to submit to chemical testing or using a motor vehicle with an excess or specified range of alcohol concentration.

¶ 47.   We now turn to applying Wis. Stat. § 343.307(1)(d), using the § 340.01(9r) definition of "conviction," to the facts of the instant case.

¶ 48.   The word "conviction" is defined in Wis. Stat. § 340.01(9r) to mean "an unvacated adjudication of guilt, or a determination that a person has violated or

_____

[17] *List*, 277 Wis. 2d 836, ¶ 7.

The State argues that the court of appeals followed a similar approach in *State v. Puchacz*, 2010 WI App 30, ¶ 13, 323 Wis. 2d 741, 780 N.W.2d 536. In that case the court of appeals interpreted Wis. Stat. § 343.307(1)(d) to count three prior violations in Michigan for operating while visibly impaired for purpose of sentencing on an OWI charge.

18

failed to comply with the law in a court of original jurisdiction or an authorized administrative tribunal . . . ."

¶ 49. No one argues that Carter's operating privilege suspensions involved an unvacated adjudication of guilt under the definition of "convictions" or involved "a determination that a person has violated or failed to comply with the law in a court of original jurisdiction."

¶ 50. Illinois "zero tolerance" suspensions are administrative in nature. These suspensions are not adjudications of guilt or "determination[s] that a person has violated or failed to comply with the law in a court of original jurisdiction."[18]

¶ 51. Because these prior Illinois suspensions are administrative, the pertinent question we must analyze under Wis. Stat. § 340.01(9r) is whether an Illinois "zero tolerance" suspension is a determination that a person has violated or failed to comply with the law in an authorized administrative tribunal. We agree with the State that the Illinois suspensions in the present case were determinations in "an authorized administrative tribunal" that Carter "violated or failed to comply with the law."

¶ 52. In the Illinois "zero tolerance" suspension statutory framework, an initial determination that a person has violated or failed to comply with the law is made by the law enforcement officer. Upon submission

[18] In *List,* 306 Wis. 2d 752, ¶ 10, the court of appeals determined that an Illinois court's supervision of a defendant was a conviction, that is, a determination that the defendant "violated or failed to comply with the law in a court of original jurisdiction." In contrast, the Illinois "zero tolerance" statutory scheme is administrative and does not provide for a determination in a court of original jurisdiction. *See Arvia v. Madigan,* 809 N.E.2d at 98–99.

19

of a report of the violation from the police officer to the Secretary of State, the Secretary of State appears to automatically affirm the suspension. The statutory procedure allows, however, for an appeal of the suspension to the Secretary of State. This appeal requires the Secretary of State, an authorized administrative tribunal, to make a determination as to whether the person has violated or failed to comply with the law. The decision of the Secretary of State is subject to judicial review.[19]

¶ 53.  Carter's two prior Illinois "zero tolerance" suspensions are determinations by an authorized administrative tribunal that Carter has violated or failed to comply with the law. Therefore, the two prior Illinois "zero tolerance" suspensions fall within the definition of the word "convictions" under Wis. Stat. §§ 340.01(9r) and 343.307(1)(d).

¶ 54.  Because the Illinois "zero tolerance" suspensions are convictions for the purposes of Wis. Stat. § 343.307(1)(d), we continue our analysis under Wis. Stat. § 343.307(1)(d) to determine the conduct proscribed under Illinois law. The Illinois statutory scheme for "zero tolerance" punishes a person who is less than 21 years of age for refusing to submit to a chemical test, or for using a motor vehicle with an alcohol concentration above 0.00.

---

[19] *Arvia v. Madigan,* 809 N.E.2d 88, 98–99 (Ill. 2004).

Although Carter did not seek administrative or judicial review of the Secretary of State's initial decision, he had the opportunity to do so. Carter's failure to seek administrative or judicial review in effect renders the decision of the Secretary of State a determination by an authorized administrative tribunal. There is no justification for treating a person who does not seek administrative or judicial review in Illinois more favorably under Wisconsin law than a person who sought administrative or judicial review and lost.

¶ 55. Analyzed in the context of the language of Wis. Stat. § 343.307(1)(d), an Illinois "zero tolerance" suspension is a conviction under a law of another jurisdiction that prohibits refusal of chemical testing or prohibits using a motor vehicle with an excess or specified range of alcohol concentration. In this case it is undisputed that the Illinois zero tolerance law prohibits a person under the age of 21 from using a motor vehicle with an alcohol concentration in excess of 0.00. Thus Carter's Illinois "zero tolerance" suspensions fall squarely within the prohibited conduct listed in Wis. Stat. § 343.307(1)(d).

¶ 56. Because we conclude that the suspensions under Illinois' "zero tolerance" law are convictions under Wis. Stat. §§ 340.01(9r) and 343.307(1)(d) as administrative determinations in an authorized administrative tribunal that a person has violated or failed to comply with a law and that the conduct prohibited under the Illinois law falls squarely within conduct specifically prohibited in Wis. Stat. § 343.307(1)(d), we hold that the circuit court correctly applied Wis. Stat. § 343.307(1)(d) in counting Carter's two prior Illinois "zero tolerance" suspensions for purposes of enhancement in sentencing for his OWI offense.

IV

¶ 57. Carter asserts that our interpretation of Wis. Stat. § 343.307(1)(d) is incorrect because it results in unfairness. He argues that fairness played a factor in the *List, Machgan,* and *Carter* decisions in the court of appeals. The court of appeals tended to treat out-of-state violations in the same way similar Wisconsin violations would be treated.

¶ 58. Carter urges us to accept the reasoning of the court of appeals in *Machgan* that an out-of-state

21

administrative suspension under a "zero tolerance" law should not be counted as a conviction for enhancement purposes when in-state similar revocations are not counted for enhancement purposes.[20]

¶ 59.  Carter and *Machgan* are correct that revocations and suspensions under the Wisconsin "absolute sobriety" law do not count for purposes of penalty enhancement in OWI violations. Yet we now hold that a suspension under the Illinois "zero tolerance" law counts for the purpose of penalty enhancement in OWI violations. Thus we interpret the Wisconsin statutes as imposing a greater penalty on an underage individual driving in Illinois than they impose on the same individual driving in Wisconsin for the same kind of conduct involving the "zero tolerance" or "absolute sobriety" laws.

¶ 60.  For example, a person under the legal drinking age driving in South Beloit, Illinois (just over the Wisconsin border) whose chemical test demonstrates a 0.01 blood alcohol concentration and whose operating privilege is suspended, will have that suspension count in Wisconsin as a prior conviction under Wis. Stat. § 343.307(1)(d). But a person under the legal drinking age driving in Beloit, Wisconsin (just over the Illinois border), whose chemical test demonstrates a 0.01 blood alcohol concentration and whose operating privilege is suspended will not have that suspension count in Wisconsin as a prior conviction under § 343.307(1).

¶ 61.  Similarly, under Wis. Stat. § 343.307(1)(e) it is clear that Illinois "zero tolerance" revocations and suspensions for refusal to submit to chemical testing count for penalty enhancement, even though a Wiscon-

---

[20] *State v. Machgan,* 2007 WI App 263, ¶ 15, 306 Wis. 2d 752, 743 N.W.2d 832.

sin revocation for the same conduct is not counted. Thus, the legislature has expressly chosen to exclude revocations under Wisconsin's "absolute sobriety" statutes from being counted in penalty enhancement, but has not made a similar exclusion for suspensions under out-of-state "zero tolerance" statutes in § 343.307(1)(e).

¶ 62.   Carter also argues that our interpretation treats too harshly persons who have not attained the legal drinking age and who are violating a zero tolerance law but are not operating a vehicle while intoxicated.

¶ 63.   The Wisconsin legislature could have carved out an exception for out-of-state "zero tolerance" suspensions, similar to the exception it carved out for Wisconsin "absolute sobriety" suspensions. It did not. Instead the legislature has promulgated language in Wis. Stat. § 343.307(1)(d) and (e) to encompass a broad array of convictions, suspensions, and revocations under the laws of another jurisdiction for counting purposes. Under these circumstances, the court cannot usurp the role of the legislature and carve out an exception for suspensions under the Illinois "zero tolerance" laws.

¶ 64.   Whether consistency in counting "absolute sobriety" revocations under Wisconsin law and similar "zero tolerance" suspensions under other states' laws is appropriate, and whether burdening youths with multiple convictions by counting suspensions under out-of-state zero tolerance laws for penalty enhancement is appropriate, are policy decisions for the legislature. If consistency is desirable, it is the legislature's role to determine how best to achieve it.

¶ 65.   For the reasons set forth, we reverse the decision of the court of appeals and affirm the judgment of the circuit court. We conclude that the two prior

23

suspensions of Carter's operating privilege under the Illinois "zero tolerance" law are convictions within the meaning of Wis. Stat. §§ 343.307(1)(d) and 340.01(9r) and that the circuit court appropriately counted them in sentencing Carter for his OWI violation.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 66. N. PATRICK CROOKS, J., did not participate.

¶ 67. ANN WALSH BRADLEY, J. (*dissenting*). I believe that those who repeatedly operate a motor vehicle while intoxicated (OWI) should have their record travel with them, no matter where in the country these offenses were committed. For instance, if the defendant had two prior OWI convictions in Illinois and was subsequently arrested in Wisconsin for OWI, the prior Illinois offenses should be counted for sentence enhancement purposes and the defendant should be charged with OWI third offense. I conclude that this is a result that the legislature intended when it enacted the counting statute, Wis. Stat. § 343.307(1)(d).

¶ 68. I also believe that Wisconsin's "absolute sobriety" law for underage drivers and its Illinois counterpart, called "zero tolerance," are important legislative enactments of public policy. Both provide that it is against the law for persons under the age of 21 to drive if they have consumed even one sip of alcohol—regardless of whether this consumption actually affects their driving or judgment.

¶ 69. I write separately because I conclude that the majority's interpretation of Wis. Stat. § 343.307(1)(d) is in error. The majority concludes that in enacting Wis. Stat. § 343.307(1)(d), the legislature intended to count a prior out-of-state youthful zero tolerance violation the

24

same as a prior out-of-state OWI offense for purposes of sentence enhancement. A review of the legislative history reveals a very different legislative intent.

¶ 70. The rationale for the introduction of the legislation can be found in several places in the legislative history and can be succinctly stated as follows: "DOT RATIONALE: . . . Without having the ability to treat out of state OWI convictions as if they had occurred in Wisconsin, we may not be in compliance with the federal requirements."[1] In addition, the legislative history reflects an intent to address offenses related to the lower range of alcohol concentration for commercial carriers. Because I conclude that the majority interpretation is at odds with the legislative history and fails to apply a standard canon of statutory construction, I respectfully dissent.

I

¶ 71. As the majority acknowledges, Wis. Stat. § 343.307(1)(d) is a cumbersome statute. Majority op., ¶ 29. In relevant part, that statute provides that when calculating the length of an OWI sentence,[2] the court shall count "[c]onvictions under the law of another

---

[1] *See* CDL Advisory Council, Draft #3 Resolution of Issues Discussed March 6, 1989, at 7 (June 5, 1989) (on file at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin) [hereinafter CDL Advisory Council Memorandum].

[2] The *Wisconsin Judicial Benchbook* explains that "[t]he offense commonly referred to as OWI relates to three (3) separate, but interrelated offenses." *Wisconsin Judicial Benchbook: Criminal and Traffic*, TR 1–15 (2010). Wisconsin Stat. § 346.63(1)(a) prohibits driving or operating a motor vehicle while under the influence of an intoxicant, controlled substance, controlled substance analog, or any combination that renders a person incapable of safely driving ("OWI"). Wisconsin Stat.

25

jurisdiction that prohibits a person from . . . using a motor vehicle . . . with an excess or specified range of alcohol concentration . . . as those or substantially similar terms are used in that jurisdiction's laws." Wis. Stat. § 343.307(1)(d).

¶ 72. Given that Wis. Stat. § 343.307(1) does not count a violation of Wisconsin's absolute sobriety law, the majority asks whether Wis. Stat. § 343.307(1) "treats a violation of the Illinois 'zero tolerance' laws differently than the way it treats a violation of the Wisconsin 'absolute sobriety' laws in counting offenses for purposes of sentencing." Majority op., ¶ 18. In answering this question, the majority focuses its examination on the statutory term "conviction." *Id.*, ¶¶ 31–53. It concludes that an administrative suspension for a violation of the Illinois zero tolerance law is a "conviction" as that term is used in Wis. Stat. § 343.307(1)(d), and that such a conviction should be counted for enhancing the penalty at sentencing.

¶ 73. The problem with the majority's analysis is that it focuses on only part of the statutory language. It does not separately examine whether the legislature intended the phrase "with an excess or specified range of alcohol concentration" to encompass Illinois zero tolerance violations. If it had examined this additional phrase, it would have reached a different conclusion. Instead, the majority simply concludes that the conduct prohibited under the Illinois law "fall[s] squarely within the prohibited conduct listed in Wis. Stat. § 343.307(1)(d)." *Id.*, ¶ 55.

---

§ 346.63(1)(am) prohibits driving or operating a motor vehicle with a detectable amount of a restricted controlled substance ("OCS"). Wisconsin Stat. § 346.63(1)(b) prohibits driving or operating a motor vehicle with a prohibited alcohol concentration ("PAC").

¶ 74. The majority's focus is not surprising, given that the parties focused their arguments on the term "conviction." Neither party advanced any interpretation of the phrase "with an excess or specified range of alcohol concentration." Nevertheless, my review of the legislative history indicates that the legislature intended the phrase "excess or specified range of alcohol concentration" to encompass OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators—not youthful zero-tolerance offenses.

## II

¶ 75. The phrase "with an excess or specified range of alcohol concentration" first appeared in the Wisconsin Statutes in 1989. It was introduced by 1989 Wis. Act 105, which significantly amended Wisconsin's driver licensing scheme. Among other changes, the phrase "with an excess or specified range of alcohol concentration" was inserted in Wis. Stat. § 343.307(1) and five other statutes.[3]

¶ 76. The drafting history reveals that the act was intended to implement the federal Commercial Motor Vehicle Safety Act of 1986. The legislature requested that the Department of Transportation (DOT) draft legislation to accomplish this goal. It appears that the DOT convened an advisory council to evaluate Wisconsin law in light of the Commercial Motor Vehicle Safety Act and to make recommendations.

---

[3] See Wis. Stat. §§ 343.307(2), 343.30(1q)(b)1, 343.305(10)(b)1, 343.31(2), and 343.315(2)2 (1989–90, as amended by 1989 Wis. Act 105).

¶ 77. The advisory council identified what it referred to as "the *Mattson* problem."[4] In *State v. Mattson,* 140 Wis. 2d 24, 409 N.W.2d 138 (Ct. App. 1987), the court of appeals held that a Minnesota drunk driving conviction did not count as a prior conviction because Minnesota's OWI statute was not in strict conformity with Wisconsin's OWI statute. Minnesota's statute included several offenses, such as intoxicated snowmobiling, that were not penalized as OWI offenses in Wisconsin.[5] The *Mattson* holding made it very difficult to count out-of-state OWI offenses as prior convictions, and it appeared to bring Wisconsin law out of compliance with the Commercial Motor Vehicle Safety Act.

¶ 78. The advisory council explained: "Without the *Mattson* solution, our ability to consider offenses committed in other states could again be challenged. Without having the ability to treat out of state OWI convictions as if they had occurred in Wisconsin, we may not be in compliance with the federal requirements."[6] Noncompliance would result in a loss of substantial federal highway funds. Thus, it was imperative to add language which would nullify the effect of *Mattson.*

¶ 79. Based on the advisory council's recommendations, the DOT drafted proposed legislation. It explained that the proposed legislation "revises the present statutory provisions concerning the counting of prior convictions in other states for operating while intoxicated ('OWI') and certain major traffic offenses" and "would count out-of-state OWI offenses as prior

---

[4] *See* CDL Advisory Council Memorandum, *supra* n.1, at 7.

[5] *State v. Mattson,* 140 Wis. 2d 24, 29–30, 409 N.W.2d 138 (Ct. App. 1987).

[6] CDL Advisory Council Memorandum, *supra* n.1, at 7.

28

offenses even if the other state's law was not completely identical to Wisconsin's law."[7] The new legislation would allow convictions under another state's law to be counted "if that law prohibited the same sort of conduct as Wisconsin's law, regardless of technical or minor substantive differences between the two states' laws."[8]

¶ 80. To accomplish this end, the DOT proposed that the legislature insert the new phrase "with an excess alcohol concentration" in several places throughout the statute. It proposed that this phrase be placed in both Wis. Stat. §§ 343.30(1q)(b)1 and 343.305(10)(b)1, which provided that under certain circumstances, a court was required to suspend or revoke a person's operating privileges. Prior to the 1989 amendments, both of these statutes read: "If a person has a conviction for any offense under a local ordinance in or a state statute of another state which is in conformity with s. 346.63(1)(a) [OWI] or (b) [PAC] or both, that conviction shall count as a prior conviction under this subdivision."

¶ 81. The DOT proposed that Wis. Stat. § 343.30(1q)(b)1 be amended to require suspension of operating privileges when a person has:

> a *conviction* for any offense under a local ordinance in conformity with s. 346.63(1)(a) or (b) or both, or *under the law of another state that prohibits* refusal of alcohol testing or *use of a motor vehicle* while intoxicated or under the influence of a controlled substance or a compilation thereof, or *with an excess alcohol concentration,* or under the influence of any drug to a degree

---

[7] Wisconsin Department of Transportation, Wisconsin Motor Carrier Safety Act Draft #4, at 2 (August 18, 1989) (on file at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin) [hereinafter DOT Draft].

[8] *Id.*

that renders the person incapable of safely driving, as those or substantially similar terms are defined in that state's laws.[9]

The DOT proposed that nearly identical language be inserted into Wis. Stat. § 343.305(10)(b)1.[10] In both places, a note from the Office of General Counsel for the DOT explained that "[t]his language is intended to allow counting of out-of-state OWI-related convictions, notwithstanding [*Mattson*]."[11]

¶ 82. At the same time that the DOT proposed the above modifications, it also proposed modifying Wis. Stat. § 343.307(1), the counting statute which is relevant to Carter's case. Prior to the 1989 amendments, this statute provided in part that "convictions for violations under s. 346.63(1), or a local ordinance in conformity therewith or a local ordinance in or a state statute of another state in conformity therewith" would count for sentencing purposes. Wis. Stat. § 343.307 (1987–88). The DOT proposed adding the following language: "*convictions under the law of another state that prohibits* refusal of alcohol testing or *use of a motor vehicle* while intoxicated or under the influence of a controlled substance, or a combination thereof, or *with an excess alcohol concentration,* or under the influence of any drug to a degree that renders the person incapable of safely driving, as those or substantially similar terms are defined in that state's laws."[12]

¶ 83. Because the proposed language modifying the counting statute is identical to the proposed lan-

---

[9] *Id.* at 77–78 (emphasis added).

[10] In the draft of Wis. Stat. § 343.305(10)(b)1, the word "combination" is used instead of "compilation."

[11] DOT Draft, *supra* n.7, at 78, 87.

[12] *Id.* at 88–89 (emphasis added).

guage modifying Wis. Stat. §§ 343.30(1q)(b)1 and 343.305(10)(b)1, and because the proposals were contemporaneously made, it appears that the intent underlying the DOT's proposed amendments was the same. I conclude that the intent was to "count out-of-state OWI offenses as prior offenses even if the other state's law was not completely identical to Wisconsin's law."[13]

¶ 84. The DOT's proposal was sent to the Legislative Reference Bureau (LRB). The LRB retained much of the language that had been proposed by the DOT. However, the LRB modified the phrase "or with an excess alcohol concentration" to "or with an excess *or specified range* of alcohol concentration" in a draft dated September 28, 1989.[14] This change was likewise reflected in the amendments to Wis. Stat. §§ 343.307(2), 343.30(1q)(b)1, 343.305(10)(b)1, 343.31(2), and 343.315(2),[15] and it was passed by the legislature.[16]

---

[13] *See id.* at 2.

[14] *See* Preliminary Draft of 1989 Wis. Act 105, at 65 (Sept. 28, 1989) (emphasis added) (on file at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin).

[15] Wisconsin Stat. § 343.307(2) is the counterpart to the counting statute interpreted today. It comes into play when the offender's current offense is for refusal to take a test rather than OWI. Wisconsin Stat. §§ 343.30(1q)(b) and 343.305(10)(b)1, discussed above, provide that under certain circumstances a court must suspend or revoke a person's operating license. Wisconsin Stat. 343.31(2) provides that under certain circumstances the DOT (rather than a court) must suspend or revoke a person's operating license. Finally, Wis. Stat. § 343.315(2), discussed below, provides that a person shall be disqualified from operating a commercial motor vehicle for a period of time upon conviction of certain offenses.

[16] *See* 1989 Wis. Act 105.

31

¶ 85. There is no explicit explanation for the LRB's addition of the phrase "or specified range" to the proposed amendments. It likely was to reference the new offense created by the legislation for operating a commercial vehicle with a blood alcohol concentration of 0.04–0.08—a lower blood alcohol concentration than for non-commercial drivers.[17] There is no indication whatsoever that the modification of this language was intended to substantively change the DOT's proposal.

¶ 86. Accordingly, it appears that the LRB's intent was the same as the expressed intent of the DOT—to count OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators. The change was necessary for Wisconsin to come into compliance with the federal Commercial Motor Vehicle Safety Act of 1986.

¶ 87. The analysis that the LRB provided for 1989 Wis. Act 105 clearly shows the purpose and goals of the legislation. The purpose was to come into compliance with the federal law pertaining to the safety of commercial motor vehicles. The goals included removing problem drivers from the highways and establishing uniformity. Finally, new offenses were created related to the operation of commercial vehicles:

> This bill implements the requirements of the federal commercial motor vehicle safety act of 1986 and estab-

---

[17] To bring Wisconsin into compliance with the Commercial Motor Vehicle Safety Act, Wisconsin was required to lower the range of alcohol concentration permitted for commercial motor vehicle operators. The council explained: "Regulations implementing the [Commercial Motor Vehicle Safety Act] require a .04 BAC standard for commercial driver licensees." Policy Recommendations for Implementing the Commercial Motor Vehicle Safety Act, at 4 (June 30, 1989) (on file at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin).

lishes a classified driver license system. The goals of the federal act are to improve driver quality, remove problem drivers from the highways and to establish uniform procedures . . . . The federal act requires states to establish minimum standards to ensure a uniform national system and to participate in a national information system to exchange information regarding the licensing, suspension or conviction of traffic violations of commercial motor vehicle drivers. . . .

The bill also creates numerous offenses relating to driver licensing and the operation of commercial motor vehicles.[18]

Accordingly, I conclude that the majority's interpretation is at odds with the legislative history.

## III

¶ 88. The majority's interpretation also fails to apply a standard canon of statutory construction. When the same phrase is used repeatedly throughout a chapter of the statutes, it is reasonable to deduce that the legislature intended the phrase to have the same meaning each time it appears.[19] *Bank Mutual v. S.J. Boyer Constr., Inc.,* 2010 WI 74, ¶ 31, 326 Wis. 2d 521, 785 N.W.2d 462. This is especially true when the phrase was introduced in multiple places of the statutory chapter at the same time, all as part of the same bill. Like the

---

[18] Analysis by the Legislative Reference Bureau, at 4 (on file at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin).

[19] The Legislative Reference Bureau has provided the following guidance when drafting legislation: "[L]egislative style should avoid variation in sentence form and should use identical words for the expression of identical ideas to the point of monotony." Legislative Reference Bureau, *Wisconsin Bill Drafting Manual 2011–2012* § 2.01(15)(a) (rev. ed. 2010).

legislative history, this rule of statutory construction supports the conclusion that the legislature intended the phrase "excess or specified range of alcohol concentration" to encompass OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators.

¶ 89.  In addition to appearing in the counting statute, the phrase "with an excess or specified range of alcohol concentration" now appears in two other statutes:   Wis. Stat. § 343.31 and Wis. Stat. § 343.315(2). It is of great import that when it is used in these other statutes, the phrase "excess or specified range of alcohol concentration" is consistently paired with OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators —not youthful zero-tolerance offenses.

¶ 90.  Wisconsin Stat. § 343.31 directs the DOT to revoke operating privileges of anyone convicted of certain Wisconsin and out-of-state offenses. Subsection (1) lists Wisconsin convictions warranting revocation, including convictions for operating a motor vehicle while under the influence of an intoxicant, injury by intoxicated operation of vehicle, and injury by operation of a commercial motor vehicle when the person has an alcohol concentration of 0.04 or more but less than 0.08. Subsection (1) does not provide for revocation upon violation of Wisconsin's absolute sobriety law.

¶ 91.  Subsection (2) provides that "[t]he department shall revoke the operating privilege of any resident upon receiving notice" of an out-of-state conviction which, "if committed in this state, would have been cause for revocation under this section or for revocation under s. 343.30(1q)." As set forth above, a youthful zero tolerance violation would not have been "cause for revocation under this section." Likewise, a youthful

34

zero tolerance violation would not have been cause for revocation under Wis. Stat. § 343.30(1q). Under that statute, revocation is required if the resident has been convicted of OWI, causing injury by intoxicated use of a vehicle, or homicide by intoxicated use of a vehicle.

¶ 92. Similarly, the phrase "with an excess or specified range of alcohol concentration" is found twice within the commercial motor vehicle disqualification statute, Wis. Stat. § 343.315(2). That statute provides that a person shall be disqualified from operating a commercial motor vehicle upon a first conviction of certain offenses. Again, the phrase is paired with OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators—not youthful zero-tolerance offenses.[20]

---

[20] Wisconsin Stat. § 343.315(2)(a)2 mandates disqualification from operating a commercial motor vehicle upon conviction under two Wisconsin statutes, Wis. Stat. §§ 346.63(1)(b) and (5)(a). Those two statutes prohibit operating a vehicle with a prohibited alcohol concentration and operating a commercial motor vehicle with a range of blood alcohol concentration between 0.04 and 0.08. Wis. Stat. § 343.315(2)(a)2 also mandates disqualification upon conviction of "the law of another jurisdiction prohibiting driving or operating a commercial motor vehicle while the person's alcohol concentration is 0.04 or more or with an excess or specified range of alcohol concentration, as those or substantially similar terms are used in that jurisdiction's laws."

Wisconsin Stat. 343.315(2)(a)6 mandates disqualification upon conviction under four Wisconsin statutes, Wis. Stat. §§ 346.63(2), 346.63(6), 940.09(1) and 940.25. Those four statutes make it unlawful for any person to cause injury to another by operation of a vehicle while under the influence of an intoxicant, controlled substance, or drug, or while operating with a prohibited alcohol content. Wisconsin Stat. 343.315(2)(a)6 mandates disqualification upon conviction of

¶ 93. Along with the legislative history, the legislature's use of this phrase in similar and contemporaneous statutes bolsters the conclusion that the legislature intended the phrase to encompass OWI-related offenses and offenses related to the lower range of alcohol concentration for commercial vehicle operators—not youthful zero tolerance violations. Accordingly, I respectfully dissent.

"the law of another jurisdiction prohibiting causing or inflicting injury, great bodily harm or death through use of a motor vehicle while intoxicated or under the influence of alcohol . . . or with an alcohol concentration of 0.04 or more or with an excess or specified range of alcohol concentration . . .as those or substantially similar terms are used in that jurisdiction's laws."