WISCONSIN ELECTRIC POWER COMPANY, Wisconsin Power
& Light Company, Wisconsin Public Service Cor-
poration, Madison Gas & Electric Company, West-
inghouse Electric Corporation, and Stone & Webster
Engineering Company, Petitioners-Appellants,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent.†

Court of Appeals

*No. 80–1402. Argued September 21, 1981.*
*—Decided December 22, 1981.*
(Also reported in 316 N.W.2d 120.)

† Petition to review granted. DAY, J., took no part.

For the appellants there were briefs by *Wm. Bradford Reynolds, Robert E. Zahler, Hannah E. M. Lieberman* and *Shaw, Pittman, Potts & Trowbridge* of Washington, D.C.; *Barton Z. Cowan, John R. Kenrick* and *Eckert, Seamans, Cherin & Mellott* of Pittsburgh, PA; *Hugh T. Lee,* and *Stone & Webster Engineering Corp.* of Boston, MA; and *David E. Beckwith, Frederick C. Moore* and *Foley & Lardner* of Milwaukee; and oral argument by *Robert E. Zahler.*

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, *Steven M. Schur,* chief

counsel, and *Curt Rogers,* assistant chief counsel, and oral argument by *Jon Kingstad.*

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Appellants are Wisconsin power companies, (which will be collectively referred to as WEPCO), Westinghouse Electric Corporation and Stone & Webster Engineering, vendors of nuclear power plant components. They appeal from the circuit court's affirmance of an administrative decision to deny trade secret protection to certain information submitted to the PSC. Because we conclude that the information for which appellants sought protection was not shown to fall within the statutory definition of "trade secret," we affirm.

WEPCO filed an application with the PSC to construct a nuclear power plant in the Town of Koshkonong, Jefferson County, Wisconsin. The PSC later ordered applicants to submit a complete list of all expenditures made or proposed, all irretrievable losses, and all contractual commitments in connection with the Koshkonong plant. At the PSC's request, the applicants submitted bids, letters of negotiation, and proposed contracts from the vendor-suppliers. Trade secret protection was requested for a minor portion of the documents in the record, which allegedly had a direct and material bearing on cost or pricing data central to the competitive interests of WEPCO and the vendors.[1]

Hearing examiner Wolter inspected the documents *in camera.*[2] He gave the documents protection under sec.

[1] The documents contain pricing information and terms and conditions of sale of services and equipment. A 3-page description of the documents for which protection is sought is provided in Exhibit A of appellants' brief. In addition, appellants seek protection for the five volumes of *in camera* hearings held during the *Koshkonong* proceedings March 15, 1977 and May 8–10, 1977.

[2] The use of *in camera* proceedings and sealed records in administrative matters involving trade secrets and other confidential information is an effective means of affording agency

227.09 (7) (a), Stats., ordering that the information not be disclosed to the public. (Access of the PSC staff to the information was not restricted.) The PSC overruled the examiner after exceptions were taken to this decision.[3] The circuit court, Byrne, J., affirmed the PSC, though rejecting much of its reasoning. Protective orders have prevented public disclosure of the information during the appeal process.

Westinghouse, Stone & Webster, and the utilities argue on appeal that the circuit court's interpretation of the statute was erroneous, that the evidence establishes their entitlement to trade secret protection, and that the PSC abused its discretion by rejecting the uncontroverted evidence that the documents contained trade secrets.

Section 227.09 (7) provides:

Notwithstanding any other provision of law, the hearing examiner presiding at a hearing may order such protective measures as are necessary to protect the trade secrets of parties to the hearing.

The agency applying the statute must determine (1) whether a trade secret is involved and (2) whether the

access to useful information without jeopardizing the confidentiality of the information. *See, e.g.,* cases at 62 ALR2d 509 (1958). The Wisconsin Supreme Court recognized the wisdom of maintaining the confidentiality of trade secrets necessarily revealed in court or administrative proceedings, even before the legislature enacted §§ 905.08 and 227.09(7), which expressly authorized such protection. *State ex rel. Ampco Metal, Inc. v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921 (1958).

[3] Initially, the circuit court, Eich, J., reversed the PSC for making such a determination without an evidentiary hearing noting, however, that the documents did not appear to contain trade secrets. On remand, the examiner received documentary material and, *in camera,* heard the testimony of Westinghouse and Stone & Webster personnel on the need for trade secret protection. No evidence was offered in opposition. A divided commission denied trade secret protection.

right of the public to be apprised of the basis of agency action outweighs demonstrated concern for the protection of the competitive position enhanced by nondisclosure.[4] The first question may be broken down into questions of fact, whether each of the statutory criteria have been met. We review the agency's findings to ascertain whether the record supports them. The burden of showing the existence of a trade secret is, however, on the party seeking protection. The failure to meet this burden on the record may justify the agency's refusal to find that a document contains trade secrets. *Besly-Welles Corp. v. Balax, Inc.*, 291 F. Supp. 328, 345–46 (E.D. Wis. 1968). We conclude that the agency was justified in finding no trade secrets on this record and was entitled to deny protection without exercising the discretion given by the statute. Consequently, we need not address the second question in this case.

Section 227.09 (7) adopts the definition of "trade secret" from sec. 943.205 (2), Stats.:

"Trade secret" means the whole or any portion or phase of any scientific, technical, laboratory, experimental, development or manufacturing information, equip-

---

[4] Whether to grant protection is left to agency discretion by the statutory language "may order." The legislature used both "may" and "shall" in § 227.09. We conclude that it intended the words to have their precise meanings. *Karow v. Milwaukee County Civil Service Comm'n*, 82 Wis.2d 565, 571, 263 N.W.2d 214, 217 (1978). A court should also consider other statutes on the same subject matter. *Wisconsin Bingo Supply & Equipment Co. v. Bingo Control Bd.*, 88 Wis. 2d 293, 303, 276 N.W.2d 716, 720 (1979). Section 905.08, Stats., declares that a judge "*shall* take such protective measures as the interests . . . of the parties and the furtherance of justice may require." [Emphasis added.] In § 227.09(7) (a), Stats., the legislature chose the word "may"; thus it is permissive or discretionary, not mandatory.

If reviewing this question, the court would apply the "substantial evidence" test to determine whether the evidence that the agency found credible would permit reasonable minds to reach the conclusion reached by the agency. *Copland v. Department of Taxation*, 16 Wis. 2d 543, 544–56, 114 N.W.2d 858, 863–64 (1962).

ment, tooling, machinery, design, process, procedure, formula or improvement, or any business information used or for use in the conduct of a business, which is manifestly intended by the owner not to be available to anyone other than the owner or persons having access thereto with the owner's consent and which accords or may accord the owner a competitive advantage over other persons.

In order to qualify it for protection under sec. 227.09 (7), appellants must establish that the information submitted to the PSC (1) was "business information used or for use in the conduct of a business" or fit into one of the other listed categories, (2) was manifestly intended to be kept confidential, and (3) accords or may accord the owner a competitive advantage. The PSC's findings on these questions of fact will be affirmed if supported by substantial evidence in the record. *Stacy v. Ashland County Department of Public Welfare,* 39 Wis. 2d 595, 603, 159 N.W.2d 630, 634 (1968).

The PSC's finding that nothing in the documents is "business information" within the meaning of the statute is consistent with the evidence in the record. The vendors do not dispute that the information they seek to protect is pricing information provided to WEPCO during negotiations for plant components and construction. Negotiating strategies and pricing information are conspicuously absent from the statutory list and are of a different type than the "scientific, technical, laboratory, experimental, development or manufacturing information" to which trade secret protection is generally accorded. Restatement of Torts § 757, Comment b (1939),[5] notes that a trade secret

[5] The definition in Restatement of Torts § 757 (1939) was applied by the supreme court in *Abbott Laboratories v. Norse Chem. Corp.,* 33 Wis. 2d 445, 456–57, 147 N.W.2d 529, 533–34 (1967), and is considered authoritative in trade secret protection

differs from other secret information in a business . . . in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract or the salary of certain employees, or the security investments made or contemplated, or the date fixed for the announcement of a new policy or for bringing out a new model or the like.

A trade secret "is a process or device which is continually used in the operation of the business and thereby differs from secret information which may refer only to an isolated transaction. Milgrim on Trade Secrets, 1968, § 2.01." *Future Plastics, Inc. v. Ware Shoals Plastics, Inc.*, 340 F. Supp. 1376, 1383 (D.S.C. 1972). Witnesses for Westinghouse and Stone & Webster admitted that specific information was not applicable to plants other than Koshkonong; the costs given were not "for continuous use," but applied only to that particular project.

The vendors argued that the percentage-of-cost profit figure that they had revealed to WEPCO would enable other vendors to underbid them. Mr. White, a witness for Stone & Webster, contended that protection would have to be extended indefinitely to prevent other companies from using the proprietary information to make a prediction about Stone & Webster's future activities. Yet, he indicated that the same percentage would not necessarily be used in bidding for other projects.

He also admitted that competitors were aware of Stone & Webster's method of fee calculation. Secrecy is an indispensable feature of a trade secret. *Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis. 2d 445, 457, 147 N.W.2d 529, 535 (1967).

cases in Wisconsin. *See Besly-Welles Corp. v. Balax, Inc.*, 291 F. Supp. 328, 345 (E.D. Wis. 1968); *Gary VanZeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 267 N.W.2d 242 (1978); *American Welding & Eng'r Co. v. Luebke*, 37 Wis. 2d 697, 155 N.W.2d 576 (1968).

Not every piece of information created in the ordinary course of business that appellants wish to keep confidential qualifies as a trade secret. Pricing policies, cost markups or the amount of a company's bid for a particular project, while ordinarily kept confidential in the business world, are not "trade secrets." *See Central Specialties Co. v. Schaefer,* 318 F. Supp. 855, 859 (N.D. Ill. 1970) ; *Haggerty v. Burkey Mills, Inc.,* 211 F. Supp. 835, 839 (E.D. N.Y. 1962). Since appellants have not sought protection for any other type of information, we rule this point against them.

Appellants have satisfied the second statutory criterion by showing that the information was "manifestly intended by the owner not to be available to anyone other than the owner or persons having access thereto with the owner's consent . . . ." The witnesses' testimony on the practice of confidentiality in the utility industry generally was supported by statements in the documents themselves.[6] It supports no other conclusion than that Westinghouse and Stone & Webster intended the proprietary status of the documents to be maintained and followed extensive procedures to assure confidentiality.

Appellants also had to show that they were or may be accorded a competitive advantage.[7] The PSC found the

---

[6] For example: Exhibit 98, the draft contract, specifies that all information contained in drawings, specifications and data provided to clients is to be held in confidence by the client and not disclosed without prior consent, except it can be disclosed if required for the operation, repair and maintenance of the facilities if similar obligations of confidentiality are imposed on the third party. Transcript, at 3957. Exhibit 91 is marked "confidential." Transcript, at 3857. Other exhibits detail WEPCO's procurement policy of soliciting written confidential bids. Exhibits 156(D)-(F).

[7] The PSC reasoned that competitive advantage to the vendors would result in a disadvantage to the utilities and concluded that competitive advantage to both was impossible. The statute re-

evidence insufficient to establish that either the utilities or Westinghouse and Stone & Webster were afforded a competitive advantage as a result of nondisclosure. The PSC gave limited weight to the opinions of Westinghouse and Stone & Webster personnel and found "inherently incredible" their testimony that vendors, architects, and engineers would not deal with the utilities if this could not be done in confidence.

Appellants argue that the PSC abused its discretion by rejecting uncontradicted evidence. The PSC found the evidence insufficient, in part by giving limited weight to the opinions of company personnel because of their interest in nondisclosure and in part because the testimony on competitive advantage was vague and inconclusive. Questions of the weight and credibility of evidence are for the commission as trier of fact. *Stacy,* 39 Wis. 2d at 603, 159 N.W.2d at 634. This is not affected by the fact that the evidence is uncontroverted. Nor is the evidence necessarily sufficient to meet the burden of showing that nondisclosure afforded a competitive advantage to the vendors or utilities merely because it was uncontroverted. The circuit court's affirmance of the commission's finding of no competitive advantage is affirmed.

Since two of the three statutory elements have not been established on this record, we conclude that no trade secrets are contained in the documents for which protec-

quires only that the owner of the secret gains competitive advantage, the utility need not benefit, although appellants attempted unsuccessfully to show that confidentiality also benefits the utilities. If the owner of the "secret," here Westinghouse or Stone & Webster, is or may be afforded a competitive advantage as a result of nondisclosure, and if the other two criteria are satisfied, then the information is a trade secret. Appellants attempted to show that a competitive advantage accrued to the utilities because the vendors were not parties until they intervened and the statute only authorizes protection for "trade secrets of parties to the hearing."

tion is sought. This disposition makes consideration of appellant's second argument that the evidence establishes their entitlement to protection under sec. 227.09 (7) unnecessary. Because no trade secrets were shown to exist, we need not review the PSC's exercise of discretion to refuse protection.

*By the Court.*—Judgment affirmed.