ANN WALSH BRADLEY, J.
f 1. Petitioner, North Highland, Inc., seeks review of an unpublished per curiam opinion of the court of appeals affirming a circuit court grant of summary judgment in favor of Frederick A. Wells ("Wells").[1] The court of appeals *500 determined that the circuit court properly entered summary judgment in favor of Wells. It concluded that North Highland failed to present evidence sufficient to support either its claim of conspiracy to breach a fiduciary duty or its claim of misappropriation of a trade secret. N. Highland Inc. v. Jefferson Mach. & Tool Inc., No. 2015AP643, unpublished slip op., ¶¶ 11, 26 (Wis. Ct. App. Apr. 28, 2016).
f 2. North Highland contends that the court of appeals erred and that it is entitled to summary judgment in its favor. It alleges that Wells conspired to breach a fiduciary duty that Dwain Trewyn ("Trewyn"), a former North Highland employee, owed to the company. North Highland further contends that Wells misappropriated a trade secret in violation of Wis. Stat. § 134.90 (2013—14) (Uniform trade secrets act).[2]
¶ 3. In this review of a grant of summary judgment, we examine the conspiracy and misappropriation claims through the lens of sufficiency of evidence. We determine that North Highland has not met its burden to show that there exists a genuine issue of material fact as to either claim. Consequently, due to insufficiency of evidence, both of North Highland's claims fail to survive Well's summary judgment motion.[3]
*501 ¶ 4. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's grant of summary judgment in favor of Frederick Wells.[4]
I—l
¶ 5. This review originates from a lawsuit North Highland brought against Frederick Wells, Dwain Trewyn, Bay Plastics, Inc., and Jefferson Machine & Tool Inc. ("Jefferson Machine").
*502 ¶ 6. Wells is the owner of Bay Plastics, a distrib-uter of customized plastic parts that it purchased from vendors. One of its vendors was North Highland, a small manufacturing company. Trewyn was an employee of North Highland with job duties that included submitting quotes and obtaining business for the company.[5]
¶ 7. When Wells decided that he wanted to form a company to manufacture the parts Bay Plastics sold, he asked Trewyn to be his partner in the new business. While Trewyn was still employed at North Highland, he and Wells formed their new manufacturing company, Jefferson Machine.[6] Wells owned 75 percent of Jefferson Machine and Trewyn owned 25 percent.
¶ 8. The underlying dispute arose when both North Highland and Jefferson Machine submitted confidential bids on a manufacturing project for Tyson Foods Inc. ("Tyson").[7] North Highland alleges that while Trewyn was still its employee, he formulated confidential bids for both North Highland and Jefferson Machine, the company he co-owned with Wells.
¶ 9. Jefferson Machine was awarded the Tyson project, but its contract was cancelled after North Highland threatened to seek an injunction, blocking the performance of the contract. Ultimately, neither Jefferson Machine nor North Highland was awarded the Tyson contract.
*503 ¶ 10. North Highland subsequently filed a lawsuit against Trewyn, Jefferson Machine, Wells, and Bay Plastics. In its amended complaint, North Highland alleged that: (1) the defendants misappropriated trade secrets; (2) Trewyn breached his fiduciary duties to North Highland and that the other defendants conspired with Trewyn in the breach of those duties; (3) Trewyn breached his contract with North Highland; and (4) the defendants interfered with Trewyn's contract with North Highland.
¶ 11. The affidavits on file demonstrate that during litigation, both Wells and Trewyn repeatedly testified at their depositions that Wells had no knowledge that Trewyn was bidding on behalf of North Highland. For example, Wells testified:
Q: Did you know that [Trewyn] was doing bidding on behalf of North Highland to some customers—
A: No.
Q: —from September to December of 2011?
A: No.
¶ 12. Wells also repeatedly testified that he had no knowledge that Trewyn was bidding specifically on the Tyson project for North Highland. For example, he testified:
Q: Did you know that [Trewyn] submitted a bid for trolleys to Tyson?
A: No, I did not.
Q: Did you know that [Trewyn] submitted any other bids to Tyson for trolleys?
A: Any other bids?
*504 Q: On North Highland's behalf.
A: No.
f 13. Trewyn similarly testified that Wells had no knowledge Trewyn was bidding on the lyson project for North Highland:
Q: And [Wells] knew about your work with Tyson, for example?
A: I didn't discuss Tyson stuff with him, no.
[[Image here]]
Q: Did you tell [Wells] that you had submitted the bid [for North Highland] in Exhibit 1?
A: No.
Q: Why not?
A: Because there was really no reason to discuss that with him.
[[Image here]]
Q: Is there any reason why you didn't mention your work on the trolleys at North Highland to [Wells]?
A: There was no reason to.
Q: You didn't think it was important?
A: No.
f 14. In addition, Wells repeatedly denied that he formed Jefferson Machine to compete against North Highland:
Q: Did you understand that Jefferson Machine & Tool was a competing business of North Highland?
*505 A: No, no, not necessarily.
[[Image here]]
Q: But you knew when you started Jefferson Machine & Tool that it would be a competing business to North Highland?
A: I did not know that, no.[8]
¶ 15. Wells further testified that he left the bidding at Jefferson Machine up to Trewyn:
Q: When [Trewyn] was doing bids for you at Jefferson Machine & Tool, did you leave quoting entirely up to him?
A: Yes.
Q: And you didn't have any oversight over his bidding, right?
A: No.
Q: Did you ever ask him about how he formulated bids?
A: No, I did not.
Q: So you just left quoting at Jefferson Machine & Tool up to [Trewyn]?
A: Yes.
¶ 16. The circuit court granted in part and denied in part the defendants' motion for summary judgment. Pursuant to the circuit court order, Bay *506 Plastics was dismissed as a party from the lawsuit and the trade secret and contract claims were dismissed with prejudice. The breach of fiduciary duty and conspiracy to breach a fiduciary duty claims remained.
¶ 17. Two days before trial on the fiduciary duty claims, Trewyn filed a Chapter 7 bankruptcy petition. In response, North Highland filed an adversary claim against Trewyn arguing that its state law claims were non-dischargeable in bankruptcy. Ultimately, North Highland and Trewyn entered into a settlement agreement that dismissed North Highland's claims against Trewyn with prejudice. The settlement allowed North Highland to maintain its state law claims against Wells and Jefferson Machine.
f 18. Wells moved to dismiss the remaining claims against both him and Jefferson Machine, arguing that a litigant may not maintain a derivative conspiracy claim when it has settled and dismissed all claims against the actual tortfeasor. The circuit court granted Wells' motion to dismiss. North Highland appealed the circuit court's decision, naming Wells as the only respondent.[9]
¶ 19. The court of appeals issued a per curium opinion affirming the circuit court order. It determined that the circuit court properly entered summary judgment in favor of Wells because North Highland failed to set forth any facts establishing there was a conspiracy. N. Highland, No. 2015AP643, unpublished slip op., |¶ 16-17. Likewise, it determined that North Highland did not meet its burden of establishing that the amount of its bid for the Tyson project constituted a trade secret. Id., ¶ 26.
*507 ¶ 20. In this case we are asked to review the court of appeals' decision affirming the circuit court's grant of summary judgment in favor of Wells. We review a decision granting summary judgment independently of the determinations rendered by the circuit court and the court of appeals. Lambrecht v. Estate of Kaczmarczyk, 2001 WI 25, ¶ 21, 241 Wis. 2d 804, 623 N.W.2d 751.
¶ 21. On review, we apply the same two-step analysis the circuit court applies pursuant to Wis. Stat. § 802.08(2). It provides that the "judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). We examine the record in the light most favorable to the non-moving party. Lambrecht, 241 Wis. 2d 804, ¶ 3 (citation omitted).
f 22. "The mere allegation of a factual dispute will not defeat an otherwise properly supported motion for summary judgment." Helland v. Kurtis A. Froedert Mem'l Lutheran Hosp., 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999). A party opposing a motion for summary judgment must demonstrate that there exists a genuine issue of material fact. Id. "It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony that is not based upon personal knowledge." Id. (citation omitted).[10]
*508 ¶ 23. Finally, a claim for conspiracy to breach a fiduciary duty requires a more stringent test than whether a reasonable inference may be drawn from the facts. Maleki v. Fine-Lando Clinic Chartered, S.C., 162 Wis. 2d 73, 84, 469 N.W.2d 629 (1991). To prove a conspiracy, a plaintiff "must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." Id. In order to sustain a jury verdict of conspiracy, there "must be a quantum of evidence that the trial judge can conclude leads to a reasonable inference of conspiracy." Id. at 85. If circumstantial evidence supports equal inferences of lawful or unlawful action, then the conspiracy is not proven and the case should not be submitted to the jury. Id.
H—I t—< l—l
¶ 24. We address first North Highland's claim that Wells and Trewyn conspired to breach a fiduciary duty that Trewyn owed to North Highland.
*509 ¶ 25. Civil conspiracy involves "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." City of Milwaukee v. NL Indus., Inc., 2005 WI App 7, ¶ 25, 278 Wis. 2d 313, 691 N.W.2d 888 (citation omitted). A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts. Onderdonk v. Lamb, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977).[11]
¶ 26. North Highland, therefore, has the burden to "set forth specific evidentiary facts that are admissible in evidence showing that there is a genuine issue for trial" of such overt acts taken in furtherance of the conspiracy. Buckett v. Jante, 2009 WI App 55, ¶ 29, 316 Wis. 2d 804, 767 N.W.2d 376 (citations omitted). To survive summary judgment, "there must be facts that show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." Augustine v. Anti-Defamation League of B'Nai B'Rith, 75 Wis. 2d 207, 216, 249 N.W.2d 547 (1977).
*510 f 27. Additionally, "[t]o prove a conspiracy, a plaintiff must show more than a mere suspicion or conjecture that there was a conspiracy or there was evidence of the elements of a conspiracy." Maleki, 162 Wis. 2d at 84. "[I]f circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven." Allen & O'Hara, Inc. v. Barrett Wrecking, Inc., 898 F.2d 512, 516 (7th Cir. 1990) (applying Wisconsin law).
f 28. North Highland cannot sustain this burden because it points to no evidence that Wells was aware that Trewyn formulated both Jefferson Machine's and North Highland's bid on the Tyson project. If Wells was not aware that Trewyn had allegedly breached his fiduciary duty to North Highland, Wells could not take overt acts in furtherance of the conspiracy. See, e.g., Bruner v. Heritage Companies, 225 Wis. 2d 728, 736, 593 N.W.2d 814 (Ct. App. 1999) ("In short, a civil conspiracy entails two or more persons knowingly committing wrongful acts.").
f 29. However, North Highland contends that the evidence submitted to the circuit court on summary judgment is sufficient to allow a reasonable inference that Wells conspired with Trewyn. It asserts that the evidence demonstrates that there was a conspiracy because: (1) Wells and Trewyn combined to form Jefferson Machine and compete against North Highland; (2) Wells purchased the manufacturing space and equipment and materials necessary for the Tyson project; (3) Wells incorporated Jefferson Machine; and (4) Wells told Trewyn that he should bid on the Tyson project.
f 30. Based on this evidence of Wells and Trewyn's working relationship at Jefferson Machine, *511 an inference may be drawn that Trewyn shared his knowledge of the Tyson bid with Wells. However, the unrebutted deposition testimony supports the opposite conclusion. There is no evidence of the formation and operation of a conspiracy. In his deposition, Wells repeatedly denied that he formed Jefferson Machine to compete against North Highland:
Q: Did you understand that Jefferson Machine & Tool was a competing business of North Highland?
A: No, no, not necessarily.
[[Image here]]
Q: But you knew when you started Jefferson Machine & Tool that it would be a competing business to North Highland?
A: I did not know that, no.
¶ 31. Wells also repeatedly testified that he had no knowledge that Trewyn was bidding specifically on the Tyson project for North Highland. For example, he testified:
Q: Did you know that [Trewyn] submitted a bid for trolleys to Tyson?
A: No, I did not.
Q: Did you know that [Trewyn] submitted any other bids to Tyson for trolleys?
A: Any other bids?
Q: On North Highland's behalf.
A: No.
*512 f 32. As set forth more fully above, Trewyn similarly testified that Wells had no knowledge Trewyn was bidding on the Tyson project for North Highland. He stated that he did not discuss his work on the Tyson project with Wells and that he did not tell Wells that he submitted a bid for North Highland. When asked "why not?," Trewyn responded that "there was really no reason to discuss it." See supra, ¶ 13.
¶ 33. Not only is the first element of a conspiracy not met, there is no evidence that Wells told Trewyn to bid on the Jefferson Machine project. Indeed, Wells testified to the contrary during his deposition:
Q: When [Trewyn] was doing bids for you at Jefferson Machine & Tool, did you leave quoting entirely up to him?
A: Yes.
Q: And you didn't have any oversight over his bidding, right?
A: No.
Q: Did you ever ask him about how he formulated bids?
A: No, I did not.
Q: So you just left quoting at Jefferson Machine & Tool up to [Trewyn]?
A: Yes.
f 34. Without any contradictory evidence in the record, North's Highland's allegation that Wells and Trewyn conspired to breach a fiduciary duty claim is speculative at best. However, speculation is insufficient to create a genuine issue of material fact on *513 summary judgment. Helland, 229 Wis. 2d at 756. Additionally, on a claim for conspiracy, a reasonable inference must be supported by a quantum of the evidence. Maleki, 162 Wis. 2d at 85.
f 35. North Highland has produced no evidence that Wells and Trewyn entered into an agreement, explicit or otherwise, to conspire to breach TVewyn's fiduciary duty to North Highland. There is no evidence that Wells knowingly intended to compete with North Highland for the Tyson project, let alone by improper means. North Highland makes arguments aplenty in support of its position, but arguments are not facts.
¶ 36. Accordingly, we determine that North Highland has failed to provide sufficient evidence to support its conspiracy to breach a fiduciary duty claim.
IV
¶ 37. For the same reasons that North Highland's conspiracy to breach a fiduciary duty claim fails, it also cannot succeed on its claim that Wells misappropriated a trade secret in violation of Wis. Stat. § 134.90.
¶ 38. According to North Highland, its confidential bid amount on the Tyson project constitutes "information" under Wis. Stat. § 134.90(l)(c)(l)-(2). Pursuant to Wis. Stat. § 134.90(l)(c), a trade secret is defined as a specific type of information:
"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
1. The information derives independent economic value, actual or potential, from not being *514 generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.
¶ 39. The court of appeals observed that as the party seeking trade secret protection, North Highland has the burden of establishing that its bid amount for the Tyson project constitutes a trade secret. N. Highland Inc. v. Jefferson Mach. & Tool Inc., No. 2015AP643, unpublished slip op. (Wis. Ct. App. Apr. 28, 2016) (citing Wis. Elec. Power Co. v. Pub. Serv. Comm'n of Wis., 106 Wis. 2d 142, 146, 316 N.W.2d 120 (Ct. App. 1981), aff'd, 110 Wis. 2d 530, 329 N.W.2d 178 (1983)). However, we need not wade into the discussion addressing whether a bid amount constitutes a trade secret, and, if so, under what circumstances. Even if North Highland could present evidence that its bid amount constitutes "information" as that term is used in Wis. Stat. § 134.90(1)(c), it has not provided sufficient evidence demonstrating misappropriation.
¶ 40. Wisconsin Stat. § 134.90(2) provides that a person may not use or disclose a trade secret when it was acquired through improper means:
Misappropriation. No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:
(a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.
(b) Disclosing or using without express or im *515 plied consent a trade secret of another if the person did any of the following:
1. Used improper means to acquire knowledge of the trade secret.
2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:
a. Deriving it from or through a person who utilized improper means to acquire it.
b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
d. Acquiring it by accident or mistake.
¶ 41. It is apparently undisputed that Trewyn formulated the confidential bids for the Tyson project on behalf of both North Highland and Jefferson Machine. However, the parties dispute whether Wells was aware that Trewyn had access to North Highland's confidential bid amount at the same time he was formulating Jefferson Machine's bid. See Wis. Stat. § 134.90(2)(b)2. According to North Highland, it is reasonable to infer from Trewyn's testimony that he told Wells he was bidding on the Tyson contract and that Wells aided Trewyn in breaching his fiduciary duty to North Highland.
¶ 42. Contrary to North Highland's assertions, the evidence in the record fails to establish that Wells had knowledge of, let alone "acquired," "disclosed," or *516 "used" the bid amount.[12] Indeed, North Highland has not alleged in its amended complaint that Wells personally acquired, disclosed or used North Highland's bid amount in any way. There are simply no facts or reasonable inferences derived from the facts to support such an allegation.
¶ 43. As set forth above, both Wells and Trewyn repeatedly testified that Wells had no knowledge that Trewyn was also bidding on behalf of North Highland. *517 There is also no evidence in the record that Trewyn disclosed the bid amount to Wells. Given the unrebut-ted testimony that Wells was unaware that Trewyn formulated North Highland's bid on the Tyson project, we determine that North Highland has failed to meet its burden of providing sufficient evidence of misappropriation.
V
¶ 44. In sum, we determine that North Highland has not met its burden to show that there exists a genuine issue of material fact as to whether Wells and Trewyn conspired to breach a fiduciary duty. The evidence of record is insufficient to support a conspiracy claim.
1 45. We likewise conclude that North Highland has not met its burden of demonstrating that there exists a genuine issue of material fact regarding its claim that Wells misappropriated a trade secret. Again, the evidence of record fails to support such a claim. Consequently, both of North Highland's claims fail to survive Well's summary judgment motion.
f 46. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's grant of summary judgment in favor of Frederick Wells.
By the Court.—The decision of the court of appeals is affirmed.

 N. Highland Inc. v. Jefferson Mach. & Tool Inc., No. 2015AP643, unpublished slip op. (Wis. Ct. App. Apr. 28, 2016) (affirming judgment and order entered by the circuit court for Jefferson County, William F. Hue, J., presiding).
Because the court of appeals opinion is an unpublished per curium, it provides neither precedential nor persuasive value. Wis. Stat. (Rule) § 809.23(3)(b).

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 In its petition for review, North Highland framed the issues as a question of whether it could maintain suit against Wells for any of the following: (a) conspiracy with Trewyn to violate Trewyn's breach of fiduciary duties to North Highland, (b) aiding and abetting Trewyn's breach of fiduciary duties to North Highland, (c) interference with Trewyn's contractual or fiduciary obligations to North Highland, or (d) for interference with North Highland's prospective contract with another person. In its brief, it asserts that the circuit court incorrectly dismissed these claims on the basis of claim preclusion.
*501 We observe, as did the court of appeals, that the eviden-tiary record in this case is incomplete. North Highland asks this court to reverse the circuit court's decision dismissing its claims against Wells, yet the hearing transcripts setting forth the circuit court's oral ruling are not in the record before us. Additionally, the only claim set forth above that North Highland has briefed or argued before this court is its conspiracy claim against Wells. Without evidence or argument, we do not address the circuit court's grant of summary judgment on the aiding and abetting or interference claims.

 Although we affirm the court of appeals determination that North Highland's claim for misappropriation of a trade secret fails for lack of evidence, we do so with a different focus on the inquiry. The court of appeals focused on whether there was sufficient evidence to demonstrate that a bid amount constitutes a trade secret. See N. Highland Inc. v. Jefferson Mach. & Tool Inc., No. 2015AP643, ¶¶ 25 (Wis. Ct. App. Apr. 28, 2016) (determining that North Highland "fails to explain to this court why its bid amount constitutes 'information' as that term is used in Wis. Stat. § 134.90(l)(c).).
In contrast, the focus of our inquiry addresses whether there is sufficient evidence to show misappropriation. Because our determination that there is insufficient evidence to show misappropriation is dispositive, we need not further address the court of appeals' per curium disposition of this claim.
Likewise, because our determination that there is insufficient evidence to support a claim for conspiracy to breach a fiduciary duty is dispositive, we need not reach North Highland's argument that the circuit court erred in determining that its civil conspiracy claim is barred under the doctrine of claim preclusion.

 As set forth more fully below, Trewyn filed a Chapter 7 bankruptcy petition, which ultimately led to a settlement agreement dismissing North Highland's claims against Trewyn with prejudice. See infra ¶ 17.

 Trewyn did not have a non-compete agreement with North Highland.

 The Tyson project was for the manufacture of 3,000 stainless steel trolley assemblies for use in food production.

 As set forth above, Wells asserts that he formed Jefferson Machine in order to manufacture the parts that Bay Plastics sold. See supra ¶ 7.

 Given that the claims against Jefferson Machine were dismissed and not raised on appeal, we are not reviewing any claims that may apply to Jefferson Machine.

 The reliance Chief Justice Roggensack's dissent places *508 on Leske v. Leske, 197 Wis. 2d 92, 97-98, 539 N.W.2d 719 (Ct. App. 1995), is misguided. Leske is distinguishable from the facts of this case because the moving party apparently submitted no material in support of its motion beyond a statement that the plaintiff lacked evidence.
The dissent further misreads Leske, stating that "[if] a mo-vant's submissions do not establish by undisputed facts that the nonmoving party has no claim or defense, the movant has failed to meet its burden. Roggensack, C.J., dissent, ¶ 94 (citing Leske, 197 Wis. 2d at 96-97). Quite the contrary, Leske instructs that "the moving party need not support its motion with affidavits that specifically negate the opponent's claim." 197 Wis. 2d at 97 (quotation and citations omitted).

 "[Tjhere is no such thing as a civil action for conspiracy." Singer v. Singer, 245 Wis. 191, 195, 14 N.W.2d 43 (1944). Instead, there is only an action for damages caused by acts pursuant to a conspiracy, but none for the conspiracy alone. Id. Thus, "[i]n a civil action for damages for an executed conspiracy, the gist of the action is the damages." Id. "It is only the existence of overt acts which is critical, in order that damages occur, not the actionability of overt acts themselves." Radue v. Dill, 74 Wis. 2d 239, 244, 246 N.W.2d 507 (1976).

 Chief Justice Roggesack's dissent maintains that the circuit court improperly granted summary judgment because Wells "failed to make a prima facie showing of sufficient undisputed, material facts ...." Roggensack, C.J., dissent, ¶ 48.
Rather than offering disputed facts, however, the dissent creates its own facts that are unsupported by the evidentiary record.
For example, the dissent asserts that Wells "knew that the company he and Trewyn owned were making use of North Highland's bid information, but he thought North Highland had no right to object to this." Id., ¶ 109. To the contrary, Wells denied any knowledge of North Highland's bid information:
Q: This is Exhibit 3. It is a quote from Dwain Trewyn on North Highland's behalf to Tyson for trolleys, right?
A: Yes.
[[Image here]]
Q: And you didn't know about either Exhibit 1 or Exhibit 3?
A: Yes, I did not know about these.
Q: And just like for Exhibit 1, you didn't think to ask?
A: No, I did not ask.
Again, the dissent tells the reader only part of the story, leaving the reader not merely ill-informed, but misinformed. Resting its analysis and conclusion on only a cherry-picked portion of the testimony about whether Trewyn had a non-compete agreement with North Highland, together with unsupported inferences, the dissent asserts that "Wells knew that the company he and Trewyn owned were making use of North Highland's bid information." C.J. Roggensack, Dissent, ¶ 109.