COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1833**

STATE OF WISCONSIN

Cir. Ct. No.  2019CV5342

IN COURT OF APPEALS
DISTRICT I

DANIEL J. WALSH,

PLAINTIFF-APPELLANT,

V.

NEWMARK KNIGHT FRANK (AS SUCCESSOR TO MLG COMMERCIAL, LLC),

DEFENDANT-INVOLUNTARY-PLAINTIFF-RESPONDENT.

APPEAL from a judgment of the circuit court for Milwaukee County:  KASHOUA KRISTY YANG, Judge.  *Affirmed in part; reversed in part, and cause remanded for further proceedings.*

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daniel J. Walsh appeals from the judgment granted in favor of Newman Knight Frank, successor to MLG Commercial, Inc., ("MLG") dismissing claims of breach of contract and conspiracy to injure business related to a co-broker real estate commission. Walsh argues that genuine issues of material fact preclude summary judgment. Upon review, we agree that genuine issues of material fact must be resolved to determine the breach of contract claim, but that Walsh has failed to prove a genuine issue of material fact over the element of malice in the conspiracy claim. Therefore, we affirm the judgment on the conspiracy claim, reverse the judgment on the breach of contract claim, and remand this matter for further proceedings consistent with this decision.

## BACKGROUND

¶2 This case arises from commissions allegedly owed to Walsh under commercial listing contracts for two buildings located at 6100 and 6120 North Baker Road in Glendale (collectively, "the Properties") in May 2013. The Properties were owned by Garland Enterprises, LLP, which entered into the listing contracts with MLG for brokerage service. The listing contracts contemplated that MLG and any co-brokers would locate and secure a tenant or buyer for the Properties, with a commission set at 5% of the sales price or 6% if co-brokered, to be paid at closing.[1] The contracts further included an option to purchase clause, which stated that the "Seller shall pay Broker's commission, which shall be

---

[1] The listings contracts included a commission provision that "[a] percentage commission, if applicable, shall be calculated based on the purchase price if commission is earned under" the option to purchase provision. "Once earned, Broker's commission is due and payable in full at … closing … unless otherwise agreed in writing." Additionally, it provided that the "Broker's commission shall be earned if, during the term of the Listing, one owner of the Property sells, conveys, exchanges or options an interest in all or any part of the Property to another owner[.]"

earned, if, during the term of this Listing[,] Seller grants an option to purchase all or any part of the Property which is subsequently exercised[.]" The option to purchase clause is modified in the additional provisions section to apply "within [three] years of the lease term. In such event, Seller shall receive a credit for the commission paid on the unexpired lease term."

¶3 Walsh, acting as a co-broker, procured the Centers for Independence, Inc. ("CFI") as a tenant for the 6100 North Baker property, and CFI entered a sixty-six month lease with Garland in February 2014. It is undisputed that Walsh was paid a commission for the lease of the 6100 North Baker building. The lease contained a purchase option agreement, granting CFI the right to purchase the Properties. Approximately five years later, in early 2019, CFI purchased the Properties.[2]

¶4 In July 2019, Walsh filed an action against MLG, Garland, and CFI seeking a declaratory judgment that Walsh was entitled to the proper portion of the sales commission, as provided in the listing contracts. In January 2020, Walsh amended his complaint to allege claims for breach of contract, conspiracy to injure business under WIS. STAT. § 134.01 (2021-22),[3] and tortious interference with contract. MLG moved to dismiss, and the trial court concluded that the breach of

---

[2] It is undisputed that while CFI entered a lease for only the 6100 North Baker property, the purchase option agreement and the purchase was made for both 6100 and 6120 North Baker.

[3] For ease of reading and because the relevant statutory language has not changed over the course of this litigation, all references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

contract and conspiracy claims were sufficiently pled and could continue, but dismissed the tortious interference with contract claim.[4]

¶5      MLG then moved for summary judgment.  MLG argued that under the plain language of the contract, neither MLG nor Walsh could earn a sales commission because the purchase occurred in 2019, outside the first three years of the lease term in the contract, which began in 2014.  In response, Walsh argued that "within three years of the lease term" meant that the sales commission was owed on options to purchase exercised up to three years after the end of the sixty-six month lease.  He contended this meant CFI's exercise of the option to purchase the Properties in January 2019 fell within the commissionable sales period.

¶6      The circuit court[5] issued a written decision concluding that because MLG believed that neither it nor Walsh earned the sales commission because CFI did not exercise the option to purchase within three years of the lease commencing, MLG did not breach the listing contracts' agreement to pay Walsh his share of the real estate sales commission.  The circuit court further concluded that Walsh's circumstantial evidence was insufficient to prove the conspiracy claim that Garland, CFI, and MLG "acted together, with a common purpose, or with malice toward Walsh[.]"  The circuit court therefore granted summary judgment in favor of MLG on both claims and dismissed them.

---

[4] MLG was not originally served or correctly named in the complaints due to changes in MLG's ownership and business name.  The motion to dismiss was filed after MLG was properly joined as a party.  The Honorable David Swanson presided over the motion to dismiss proceedings; we refer to Judge Swanson as the trial court.

[5] The Honorable Kashoua Kristy Yang presided over the summary judgment motion; we refer to Judge Yang as the circuit court.

¶7    We note that although Walsh only appeals the judgment in MLG's favor, litigation with CFI and Garland also occurred during this time period. Walsh's claim of civil conspiracy against CFI and Garland survived motions to dismiss, but ultimately CFI and Garland were each granted summary judgment on the conspiracy claim. Walsh's breach of contract claim against Garland survived a motion to dismiss. Garland and Walsh then each filed motions for summary judgment on the breach claim, which were both denied because the court concluded that the contract language referring to "within three years" was ambiguous. Prior to this appeal, the court approved a stipulation dismissing all claims against Garland and dismissing it as a party to the action. Walsh's claim of tortious interference with contract against CFI survived a motion to dismiss, but the court later granted summary judgment in favor of CFI.

¶8    Walsh now appeals.

## DISCUSSION

¶9    Walsh argues that the circuit court erred when it granted summary judgment in favor of MLG on his claims of breach of contract and civil conspiracy to injure business under WIS. STAT. § 134.01. He asserts that genuine issues of material fact preclude summary judgment on both claims. MLG argues that under its reading of the listing contracts, the purchase occurred outside of the window for the broker to earn a commission. Therefore, MLG asserts that it could not have breached the contracts because it did not pursue a commission on the purchase of the Properties, and no duty to Walsh arose from the sale. For the conspiracy claim, MLG argues that Walsh has presented no evidence to support malice, an essential element of a civil conspiracy claim.

¶10 This case turns on whether the circuit court properly granted summary judgment in favor of MLG. WISCONSIN STAT. § 802.08(2) provides that a circuit court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶11 We independently review a grant of summary judgment, employing the same two-part process used by the circuit court. *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶18, 272 Wis. 2d 561, 681 N.W.2d 178. First, we determine whether the pleadings set forth a claim for relief. *Baumeister v. Automated Prods., Inc.*, 2004 WI 148, ¶12, 277 Wis. 2d 21, 690 N.W.2d 1. Second, we determine whether there are any "genuine issues of disputed facts that are material to the complaint's claim." *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. ¶11 "The burden is on the moving party to prove that there are no genuine issues of material fact." *Central Corp.*, 272 Wis. 2d 561, ¶19. If the moving party establishes a *prima facie* case for summary judgment, "the opposing party must then establish that there are disputed material facts, or undisputed material facts from which reasonable alternative inferences could be drawn, that entitle such a party to a trial." *Baumeister*, 277 Wis. 2d 21, ¶12. "An issue of fact is genuine if a reasonable jury could find for the nonmoving party." *Central Corp.*, 272 Wis. 2d 561, ¶19. "A material fact is such fact that would influence the outcome of the controversy." *Id.*

¶12 The court granted summary judgment in MLG's favor on both the breach of contract and the conspiracy claims. We address below the arguments regarding whether summary judgment was appropriately granted on each claim.

6

## I. Breach of contract

¶13    "The elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages." ***Pagoudis v. Keidl***, 2023 WI 27, ¶12, 406 Wis. 2d 542, 988 N.W.2d 606.  "The interpretation of a contract presents a question of law that this court decides independently of the circuit court" but benefiting from its analysis. ***Ash Park, LLC v. Alexander & Bishop, Ltd.***, 2015 WI 65, ¶32, 363 Wis. 2d 699, 866 N.W.2d 679.

¶14    Walsh argues that the co-broker commission provisions in the listing contracts establish that he and MLG earned a commission when CFI completed the purchase of the Properties in January 2019.  The provision in question in the listing contracts states that "Seller shall pay Broker's commission, which shall be earned, if, during the term of this Listing:  … Seller grants an option to purchase all or any part of the Property which is subsequently exercised … within [three] years of the lease term."  The record reflects that CFI's sixty-six month lease was commenced in February 2014.  Walsh argues that "within three years of the lease term" means that the sales commission can be earned up to three years after the sixty-six month lease term ended, which we understand to mean the lease term ended in August 2019, and the three year period would last until August 2022.  In contrast, MLG argues that the three years started at the commencement of the lease, therefore, the time period to earn a sales commission if the option to purchase was exercised ended in February 2017.  Walsh argues the January 2019 purchase falls clearly within the three years after the lease ended; MLG argues the time clearly falls outside of the three years after the lease term commenced.

¶15   Walsh therefore asserts that he has stated a claim for breach of contract and that the contract provision's ambiguous term "within three years of the lease term" is a genuine issue of material fact. *Central Corp.*, 272 Wis. 2d 561, ¶19. "[W]hen a court determines that a contract's terms are ambiguous and the intent of the parties is in dispute, summary judgment is not appropriate." *BV/B1, LLC*, 330 Wis. 2d 462, ¶19. When an ambiguous contract term "is properly construed by use of extrinsic evidence, the contract's interpretation presents a question of fact for the jury." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476. Therefore, Walsh argues that the ambiguous contract term must be resolved by a fact finder.

¶16   In contrast, MLG argues that any ambiguity about the meaning of the "within three years of the lease term" is not the question before us. Instead, MLG argues that the question before the court is not whether Walsh or MLG's interpretation of the listing contracts is correct, but whether the listing contracts require MLG to pursue a commission. MLG contends that, under its interpretation of the listing contracts, it was not entitled to a commission; therefore, it was not required to pursue a commission for Walsh's benefit. MLG contends that Walsh did not identify any provisions in the listing contracts requiring MLG to pay him the co-broker sales commission when MLG concluded that MLG itself had not earned a sales commission.

¶17   However, MLG's arguments fail and the circuit court erred in granting summary judgment because this position requires the finding that MLG's interpretation of the listing contracts is correct. When the circuit court granted summary judgment in favor of MLG, it concluded that Walsh's claim could not succeed as a matter of law, stating as follows:

Due to MLG's belief that neither MLG nor Walsh earned their commissions because CFI did not exercise its option within [three] years of the lease term, MLG did not pursue the real estate brokerage commission. MLG reasonably interpreted paragraphs [two] and [four] of the Option to Purchase. Since MLG did not receive a commission, it follows then that MLG does not run afoul of any agreement to pay Walsh his share of the real estate brokerage commission. The [c]ourt finds that MLG presents a *prima facie* case as to why Walsh's breach of contract claim against MLG cannot succeed as a matter of law. No contractual provision binds MLG to enforce the provisions of the Listing Contract that could constitute a breach, and facts do not show there was a breach of contract when MLG did not receive a real estate brokerage commission. Stated another way, Walsh failed to specify contractual terms that MLG breached nor did Walsh specify MLG's specific action or inaction that could have caused the alleged breach.[6]

¶18 We highlight two sections of the court's decision. First, the circuit court credited "MLG's belief" that it did not earn a commission. This conclusion rests on deciding that MLG's interpretation of the contracts and the meaning of the ambiguous clause "within three years of the lease term" is correct. Second, the circuit court concluded that MLG "reasonably interpreted" paragraphs two and four of the purchase option agreement. Again, this is the court deciding that MLG's interpretation is correct.

¶19 Although the importance of paragraphs two and four is underdeveloped in the record, we note that paragraph two states that the Closing

---

[6] Paragraph four of the purchase option agreement states that CFI may exercise the purchase option by giving a written Notice set the Closing Date to Garland, on or before twelve months prior to the Expiration Date. Paragraph two sets the Expiration Date, stating that to exercise the purchase option, CFI must deliver the Notice to Garland "on or before one hundred eighty (180) days prior to the Closing Date (but not later than twelve (12) months prior to the Expiration Date)[.]" However, "in no event shall the Closing Date be before the payment of thirty-six (36) months of Base Rent or later than the Termination Date (not extended by the First Renewal Term or Second Renewal Term)"

Date cannot occur before "the payment of thirty-six (36) months of Base Rent" and the listing contracts provision states that if the option to purchase is exercised "within three years of the lease term. In such event, Seller shall receive a credit for the commission paid on the unexpired lease term." We acknowledge that read in conjunction, paragraphs two and four support that the three years in question would refer to the first three years of the lease. However, this is not the only interpretation of this contract language.[7] Furthermore, MLG acknowledges that the three year term provision is ambiguous, while concurrently arguing that the ambiguity is irrelevant because it need not be resolved to determine summary judgment in its favor.

¶20 To reach its conclusion granting summary judgment to MLG on the breach claim, the circuit court had to resolve a genuine issue of material fact. This is not the circuit court's role during a summary judgment proceeding. "The court does not try the issues but decides on summary judgment whether there is an issue of fact to be tried." *Voysey v. Labisky*, 10 Wis. 2d 274, 280, 103 N.W.2d 9 (1960). The circuit court decided a summary judgment motion presented with supporting papers and affidavits that showed a dispute over an ambiguous clause. Instead of concluding that the dispute must be resolved by a fact-finder, the court accepted MLG's argument that under its interpretation of the contract, Walsh's claim failed. This was necessarily a finding about the interpretation of the listing contracts. Summary judgment was not appropriate. *BV/B1, LLC*, 330 Wis. 2d

---

[7] We note that the circuit court concluded that the ambiguity over the meaning of "within three years of the lease term" precluded summary judgment in favor of Garland or Walsh on their respective summary judgment motions on the breach of contract claim. So we conclude that the consideration of paragraphs two and four in the purchase option agreement do not resolve the interpretation of the contract overall.

462, ¶19. We conclude that the grant of summary judgment must be reversed and this matter remanded to the circuit court for additional proceedings consistent with this opinion.[8]

¶21    We note that MLG makes several arguments in support of its position that Walsh's claim fails because he had not identified a duty in the listing contracts for MLG to pursue the sales commission.[9]  We do not reach these arguments because we conclude that summary judgment was inappropriately granted.    Further, MLG's arguments are not supported by legal authority. "Arguments unsupported by references to legal authority will not be considered." ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

## II.    *Conspiracy*

¶22    Walsh's second claim is conspiracy to injure business under WIS. STAT. § 134.01.  That statute provides that an injury to business or restraint of will occurs when

---

[8] We note that the parties do not develop any argument on appeal about Walsh's status as a third-party beneficiary of the listing contracts, and the parties' arguments generally assume that Walsh is properly considered a third-party beneficiary.  Likewise, we assume for purposes of this appeal, that Walsh is a third-party beneficiary.  However, on remand, Walsh's status as such should be further explored and his status as a third-party beneficiary firmly established.

[9] MLG's arguments include:  that Walsh, as a third-party beneficiary of the listing contracts, could not impose duties not articulated in the contract on MLG; that the listing contracts lacked an enforcement clause, such as lien rights, that would compel it to assist Walsh; and that Walsh's deposition testimony defeats his claim because he testified that he understood he could (and did) pursue a claim directly against Garland.

Reviewing undisputed facts in the record, we note that the lease commission was paid to MLG, which then paid Walsh.  MLG has not shown a difference in the listing contracts terms that obligated MLG to pay Walsh for the lease commission, but did not create the same obligation and enforcement for the sales commission.  The difference between earning the lease commission and earning the sales commission comes down to the meaning of the ambiguous limiting clause "within three years of the lease term."

> [a]ny [two] or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act[.]

*Id.* "Although phrased as a criminal statute, a party may bring a civil action under the section to recover damages caused by its violation." *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶17, 289 Wis. 2d 795, 714 N.W.2d 582.

¶23 "[A]n essential element of the cause of action is the malicious motive of the conspirators sought to be charged." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 88, 469 N.W.2d 629 (1991). The United States Supreme Court interpreted "malice" in a Wisconsin conspiracy claim as "to import doing a harm malevolently, for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired." *Aikens v. Wisconsin*, 195 U.S. 194, 203 (1904).[10]

¶24 Walsh asserts that MLG's "utter failure to do anything meaningful to fight for the commission" is proof of the conspiring action to prevent him from obtaining his co-brokering commission. To support his claim, he describes MLG's failures and omissions as follows: discontinuing communication with him; failing "to genuinely pursue with any enthusiasm their own portion of the commission"; making only a single phone call to the seller's attorney; failing to

---

[10] *Aikens v. Wisconsin*, 195 U.S. 194, 203 (1904) referred to a civil conspiracy claim arising under WIS. STAT. § 4466a (1889). Although renumbered, this cause of action is substantially the same as WIS. STAT. § 134.01, under which Walsh brought his claim, thus *Aikens* remains applicable. *See Radue v. Dill*, 74 Wis. 2d 239, 243, 246 N.W.2d 507 (1976).

contact Garland; and failing to include Walsh in its evaluation of the contract interpretation. Walsh also asserts that MLG's executive managing director's deposition testimony was "not very believable" when he asserted that it was not clear whether MLG was owed a commission under the listing contracts. Walsh argues that MLG's in-house counsel's interpretation of the listing contracts was malicious. However, he fails to provide evidence of that malice and acknowledges that in-house counsel employed a plain meaning reading of the words "three-year term" means within the first three years of the lease commencement, not three years after the lease ended. We conclude that Walsh's allegations amount to no more than speculation.

¶25 While Walsh asserts that MLG failed to act with "reasonable zeal," he does not allege that there are disputed facts that show malicious action. "To prove a conspiracy, a plaintiff must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." *Maleki*, 162 Wis. 2d at 84. "[I]f circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven." *North Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶27, 377 Wis. 2d 496, 898 N.W.2d 741 (citation omitted; brackets in *North Highland Inc*.). Although Walsh argues that MLG's failures and omissions create an inference of unlawful action, this circumstantial evidence can equally support an inference of lawful action. Therefore, we conclude that Walsh's speculations do not create a genuine issue of material fact. *Id.*, ¶34 ("[S]peculation is insufficient to create a genuine issue of material fact on summary judgment.").

¶26 In contrast to Walsh's breach of contract claim, where a clear issue of material fact precludes summary judgment, Walsh has not shown disputed

issues of material facts in his conspiracy claim.[11] Even construing the facts in the light most favorable to the non-moving party, as we do when reviewing a summary judgment, Walsh's facts are not evidence of MLG acting "malevolently[.]" *Aikens*, 195 U.S. at 203; ***North Highland Inc.***, 377 Wis. 2d 496, ¶21.

## CONCLUSION

¶27 We conclude that the circuit court improperly granted summary judgment to MLG on the breach of contract claim because genuine issues of material fact exist and must be resolved. We therefore reverse the judgment in part and remand the matter for additional proceedings consistent with this opinion on the breach of contract claim. In contrast, we affirm the judgment on the conspiracy claim because Walsh failed to prove his claim as a matter of law.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] We note that even if further proceedings on remand show that Walsh's interpretation of the intent of the listing contracts is correct, his conspiracy claim would not be affected because he has not shown that MLG acted with malice to prevent him from earning the commission. The disagreement over the interpretation of the listing contracts is material to a breach claim, but does not, alone, show the element of malice in conspiracy. *See **Maleki v. Fine-Lando Clinic Chartered, S.C.***, 162 Wis. 2d 73, 86, 469 N.W.2d 629 (1991) ("There can be no conspiracy if malice is not found in respect to both [or all] conspirators.").